FILED

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**

2011 OCT 12  ⊳ 2: 57

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

JANE DOE
 c/o Jenner & Block LLP
1099 New York Avenue, NW
Suite 900
Washington, DC  20001

          Plaintiff,

v.

LINDA HOWARD
RUSSELL HOWARD
█████████████████████████ *

Arlington, VA  22204

          Defendants.

Case No. _1=11 CV 1105_
          _Lo/TRJ_

**COMPLAINT**

JURY TRIAL DEMANDED

Mrs. Jane Doe, by and through counsel, alleges as follows:

**PRELIMINARY STATEMENT**

1.       Defendants Linda Howard and Russell Howard trafficked Plaintiff Mrs. Jane Doe

("Mrs. Doe") into the United States for involuntary servitude and forced labor in their home.  In

2008, Mrs. Doe agreed to work for Linda and Russell Howard (the "Howards" or "Defendants")

as their live-in domestic worker in Yemen.  Mrs. Doe, approximately thirty-one years old at the

time of the criminal acts and violations that are the subject of this Complaint, suffered

involuntary servitude and forced labor, including repeated rapes and sexual assaults by Russell

Howard.

2.       Linda Howard, an employee of the U.S. Department of State ("State

Department"), was posted to the U.S. Embassy in Yemen when she met and hired Mrs. Doe.  Her

_____

*Mrs. Doe redacts the home address of Defendants pursuant to the Court's Guide to the amendments to Local Civil
Rule 7 Concerning Personal Identifiers.

husband, Russell Howard, accompanied her on all her foreign postings as a dependent family member.

3.      While posted abroad, Linda and Russell Howard routinely employed domestic workers to care for their home and cook meals. Mrs. Doe, a citizen of Ethiopia with limited English ability, served as one such domestic worker, first in Yemen and later in Japan.

4.      In Yemen, Mrs. Doe worked for Linda Howard alone for several months. Russell Howard lived in Yemen for only the first three weeks of Mrs. Doe's employment and did not abuse her there. Linda Howard paid Mrs. Doe $200 each month for housekeeping duties in Yemen.

5.      In late 2008, Mrs. Doe agreed to move with Linda Howard to Japan, where Linda Howard had received a new posting at the U.S. Embassy in Tokyo.

6.      Mrs. Doe and Linda Howard entered into a written employment contract for work in Japan. This contract guaranteed wages of $300 per month, time off each week, health insurance, and a safe place to live and work. Mrs. Doe did not receive all of these contractually-promised items.

7.      The brutal rapes, sexual assaults, forced labor, and involuntary servitude alleged against Defendants began soon after the Howards moved to Japan. Mrs. Doe worked more than 80 hours each week for less than a dollar an hour. And Russell Howard raped her and forced her to engage in oral sex on multiple occasions in the Tokyo residence.

8.      When Mrs. Doe protested and attempted to fight off the attacks, he abused her brutally. He told her that prior housekeepers had sexual relations with him and ordered Mrs. Doe to do the same.

2

9.      Linda Howard condoned the rape and abuse that Russell Howard inflicted on Mrs. Doe, advising Mrs. Doe that she should acquiesce to Russell Howard's demands. Linda Howard acted with intent and in concert with Russell Howard to bring Mrs. Doe to Japan to be sexually abused, held in forced labor, and placed in involuntary servitude.

10.     After approximately five months in Japan, Russell Howard threatened to have U.S. Embassy security officials deport Mrs. Doe from Japan. Mrs. Doe fled the Howards' home.

11.     Mrs. Doe eventually reported the abuse to a women's shelter. The women's shelter reported the abuse to U.S. Embassy officials in Tokyo. A few weeks later, the State Department removed Linda Howard from her overseas post and launched an investigation into the Howards' conduct. Mrs. Doe seeks justice and damages for the sexual abuse, trafficking, and emotional injuries that she suffered at the hands of the Howards.

12.     Upon information and belief, Linda Howard continues to be employed by the State Department.

## JURISDICTION AND VENUE

13.     The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 18 U.S.C. § 1595(a), a federal question, this action arising under the Trafficking Victims Protection Act. Supplemental jurisdiction exists for Mrs. Doe's state-law claim pursuant to 28 U.S.C. § 1367. The Court also has extraterritorial jurisdiction over involuntary servitude, forced labor, human trafficking, conspiracy, and obstructing enforcement offenses committed overseas pursuant to 18 U.S.C. § 3271 and 18 U.S.C. § 1596.

14.     Venue is proper pursuant to 28 U.S.C. § 1391(b) because the Defendants reside in this District.

3

## PARTIES

15.   Plaintiff Mrs. Jane Doe is a 34-year old citizen of Ethiopia.  During the events giving rise to her legal claims, Mrs. Doe was residing in Tokyo, Japan.

16.   Defendant Linda Howard is a 56-year-old citizen of the United States.  Mrs. Howard was stationed in Tokyo as a State Department official during the time of the trafficking, rape, and abuse.  Mrs. Howard resided with her husband, Defendant Russell Howard, in Tokyo, Japan.

17.   Defendant Russell Howard is, upon information and belief, an Australian citizen.

18.   Upon information and belief, the Defendants currently are residing in Virginia.

## FACTUAL ALLEGATIONS

### Recruitment and Trafficking to Japan

19.   Mrs. Jane Doe was born in Ethiopia.  Although Mrs. Doe had worked in a small coffee shop in Addis Ababa, the pay was insufficient to support her family.

20.   In approximately June 2006, seeking a better employment opportunity, Mrs. Doe traveled to Yemen to work as a domestic worker.  While working in Yemen, Mrs. Doe sent funds home to her husband and children in Ethiopia.

21.   In the summer of 2008, Linda Russell hired Mrs. Doe to work as the Howards' domestic worker in Yemen, paying Mrs. Doe $200 per month.  A few weeks after Mrs. Doe started working for the Howards, Russell Howard left for Australia and did not return.  She did not see Russell Howard again until the Howards moved to Japan.  Mrs. Doe was well-treated in Yemen and had no basis to distrust her employers.

22.   A few months later, Linda Howard informed Mrs. Doe that the State Department would transfer Linda Howard to work in the U.S. Embassy in Tokyo, Japan.  Linda Howard

4

offered to increase Mrs. Doe's pay if she came to Tokyo with the Howards.  Linda Howard also led Mrs. Doe to believe that working conditions in Japan would be similar to the favorable working conditions she had experienced in Yemen.

23.     Linda Howard provided Mrs. Doe with a three-year contract written in English. (*See* Exh. A.)  Although Mrs. Doe could not read English, Linda Howard orally represented that Mrs. Doe would be provided $300 per month under the new employment agreement, and Mrs. Doe relied on those representations.

24.     In addition to entering into a contractual relationship with Mrs. Doe, Linda Howard paid the costs and completed the paperwork needed for Mrs. Doe's travel and employment in Japan.  Linda Howard paid for Mrs. Doe's transportation to Ethiopia so she could obtain a Japanese visa.  Linda Howard paid Mrs. Doe for expenses she had incurred in Ethiopia before she went to Japan.  Linda Howard then transported Mrs. Doe to Japan, paying for her flight to Tokyo.  Mrs. Doe's husband and children remained in Ethiopia.

**Forced Labor and Exploitation in Japan**

25.     Mrs. Doe arrived in Tokyo on December 15, 2008.  Both Linda Howard and Russell Howard picked her up at the airport.  Mrs. Doe spoke no Japanese and little English and had no contacts in Japan, no independent means of support, and no means of transportation.

26.     During her employment with the Howards in Tokyo, Mrs. Doe worked between 80 and 90 hours per week.  Her duties included cleaning, washing clothes, ironing, grocery shopping, and cooking.

27.     The Howards paid Mrs. Doe $300 per month, or approximately $0.88 cents per hour.  Upon information and belief, the minimum wage in Japan is 766 yen per hour, or

approximately \$9.99 per hour.[1]  *See* http://www.mhlw.go.jp/english/wp/wp-hw3/dl/4-10.pdf.

28.     Mrs. Doe worked every day.  The Howards failed to provide adequate pay, or sufficient time off, despite Linda Howard's promises and the language of the employment contract.

29.     Mrs. Doe's written contract guaranteed adequate healthcare and insurance.  Linda Howard had orally promised that Mrs. Doe would have healthcare coverage in Japan.  Mrs. Doe, however, did not receive health or dental insurance.

30.     Mrs. Doe fell ill, experiencing kidney problems and severe colds.  Yet, when she was sick, the Howards failed to provide appropriate medical care.  The Howards' promises of medical insurance and adequate time off proved false.

## Sexual Assault, Rape and Forced "Sexual Services" in Japan

31.     Although Linda Howard was employed in Japan, Russell Howard was not.  Linda Howard left each morning for work, leaving Mrs. Doe alone with Russell Howard in the home.  A few days after Mrs. Doe arrived in Japan, Russell Howard began demanding that Mrs. Doe engage in sexual relations with him.  He frequently mentioned that the Howards had several previous domestic workers from whom he demanded sexual relations.  He told Mrs. Doe that at least one prior maid had threesome sexual contact with both of the Howards.   He said that he fired domestic workers who refused to comply with his demands.

32.     Mrs. Doe, who is deeply religious, refused to participate in these acts.  Russell Howard threatened to fire Mrs. Doe.  Russell Howard also told Mrs. Doe that, while she lived under his roof, she was not permitted to practice her religion.

---

[1] Mrs. Doe reports this information based on the most recent publicly-available data, which is the minimum wage of 766 yen/hour in Tokyo for 2008 and on the currency exchange rate as of October 10, 2011.  *See* http://coinmill.com/JPY_USD.html#JPY=766

6

33.     Russell Howard continued demanding sexual relations with Mrs. Doe. He stated that the purpose of the Howards' recruitment of Mrs. Doe to Japan was not just for domestic services, but also for Mrs. Doe to provide him with sexual services. He taunted Mrs. Doe, reminding her that the Howards had paid all of Mrs. Doe's travel and moving expenses to Tokyo. He ordered Mrs. Doe to provide sexual services for him, telling her that this was part of her duties. Mrs. Doe refused.

34.     Russell Howard became more and more aggressive. He began making physical assaults on Mrs. Doe while she was working in the house.

35.     Mrs. Doe had nowhere to turn for help. Russell Howard informed Mrs. Doe that Linda Howard was aware of his activities and already knew everything he had done with the prior domestic workers.

36.     In or about January 2009 – just weeks after Mrs. Doe first arrived in Tokyo – Linda Howard left for work early in the morning. Russell Howard entered Mrs. Doe's bedroom and raped her. Because Mrs. Doe is approximately 5' and 2" and small, Russell Howard, who is approximately 5' and 10", overpowered her. Mr. Howard used his right hand to choke and restrain Mrs. Doe.

37.     Mrs. Doe, completely isolated from the outside world, could not tell anyone about the attack or obtain medical treatment. After the rape, Mrs. Doe began loathing herself. She felt dirty and degraded.

38.     The sexual violence psychologically traumatized Mrs. Doe. This extreme trauma, when coupled with the fear of deportation or detention, immobilized Mrs. Doe.

39.     In the following weeks, Russell Howard raped Mrs. Doe three more times. Russell Howard also threatened Mrs. Doe. He told her that, if she wanted to avoid deportation,

7

she had to provide him with sexual services.

40.     Russell Howard, in addition to forcing intercourse, pulled Mrs. Doe by her hair and forced her to perform oral sex on approximately ten occasions. Russell Howard repeatedly threatened that Mrs. Doe would be deported if she did not cooperate.

41.     Russell Howard told Mrs. Doe that he and Linda Howard discussed everything he had done to Mrs. Doe. Mrs. Doe believed that Linda Howard approved of the rapes and sexual abuse.

## Threatened Abuse of Legal Process and Intent to Hold Mrs. Doe in Involuntary Servitude

42.     The threats of deportation uttered by Russell Howard to force her to engage in unwanted sexual contact terrified Mrs. Doe. When Mrs. Doe resisted his sexual attacks, Russell Howard threatened her with deportation.

43.     In addition, Mrs. Doe believed that she owed a debt to the Howards. The Defendants had paid for Mrs. Doe's travel costs, visa fees, and other expenses related to moving from Yemen to Japan. Mrs. Doe believed that she owed this money to the Howards. She believed that she could not break her contract.

44.     Russell Howard told Mrs. Doe that the true reason she was brought to Japan was for sexual services. If he and Linda Howard had needed only cleaning services, they would have employed a local housekeeper, he said. Instead, however, they transported Mrs. Doe from Yemen to Japan because they knew that Mrs. Doe, unlike a local housekeeper, would be unable to escape.

## Isolation in Japan

45.     Mrs. Doe was a virtual prisoner in the Howards' home. She had nowhere to run or to turn. She did not speak Japanese and could not communicate.

8

46.     Mrs. Doe was not permitted to leave the house alone.  On almost every occasion when she did leave the house, she was accompanied by one or both of the Howards.  Although Mrs. Doe was occasionally allowed to run quick errands alone, the Howards closely monitored Mrs. Doe's brief absences and verbally abused her if she returned home late.

47.     At one point, Mrs. Doe asked to be moved to a different part of the apartment complex where the Howards lived.  She believed this part was used for servants' quarters.  Mrs. Doe wished to move there to avoid the Howards' sexual abuse and Russell Howard's sexual violence.

48.     The Howards refused this request.  Russell Howard said Mrs. Doe was not permitted to move because she would then be less available to meet his sexual demands.  Fearing additional abuse, Mrs. Doe felt trapped.

49.     Upon information and belief, the Howards' trafficking acts were part of a larger, calculated conspiracy to isolate Mrs. Doe, rendering her unable to escape the sexual violence inflicted by Russell Howard.

50.     Upon information and belief, the Howards purposefully placed Mrs. Doe under contract, brought her to Tokyo, and subjected her to near-complete isolation.  Linda Howard and Russell Howard conspired to bring Mrs. Doe into Japan to hold her in involuntary servitude, forced labor, and sexual servitude.

51.     Upon information and belief, Linda Howard knew Russell Howard raped and sexually abused Mrs. Doe.  Linda Howard conspired with Russell Howard to keep Mrs. Doe in involuntary servitude and forced labor, including forced sexual services.  In fact, Linda Howard advised Mrs. Doe to submit to Russell Howard's demands, telling her she should "try to make him happy and fulfill his needs."

9

52.    On several occasions, Russell Howard also told Mrs. Doe that Linda Howard wanted to have a threesome with Mrs. Doe. He described how he and his wife had previously subjugated other domestic workers and sexually abused them. As one example, Russell Howard informed Mrs. Doe that he and Linda Howard had sex with another maid while she was drunk and passed out.

53.    Throughout her time in Japan, Mrs. Doe continued resisting Russell Howard's sexually violent attacks. Mrs. Doe lived in a constant state of terror.

**Escape from the Defendants' Residence**

54.    In or about April 2009, Mrs. Doe obtained permission from the Howards to make a quick trip to a nearby Ethiopian restaurant.

55.    Mrs. Doe wanted to obtain Japanese government-issued identification, just in case something happened to her. On that day, with the help of someone from the Ethiopian restaurant, she attempted to locate the appropriate government office to obtain an identification card. Mrs. Doe was running late and when she returned to the restaurant, an employee told Mrs. Doe that Russell Howard had called the restaurant to find her.

56.    Russell Howard called the restaurant again and, this time, he spoke to Mrs. Doe. He was infuriated, threatening to deport her and commanding her to pack her bags immediately. When Mrs. Doe came home, Mr. Howard exploded with rage. He threatened to call security at the U.S. Embassy and to have her arrested and taken away.

57.    Mrs. Doe was terrified of detention and deportation. Without any Japanese identification papers, she feared that she would be imprisoned by immigration authorities if she were thrown out of the Howards' home.

58.     Mrs. Doe asked Linda Howard to intervene on her behalf with Russell Howard. But Linda Howard replied that she stood by her husband's position and agreed that Mrs. Doe should be deported.

59.     That evening, the Howards told Mrs. Doe that, if she did not disappear that night, they would have her deported the next morning.

60.     Mrs. Doe considered committing suicide, but decided she would try to escape instead.

61.     Mrs. Doe did not know where to go.  Because it was cold and raining, she put on all of her clothes – one layer over the next.  She fled the Howards' home at approximately 2:30 AM.

62.     Mrs. Doe asked people on the street for help.  Because she could not speak Japanese, she was unable to find anyone to help.  She wandered on foot all night.  She did not know where she was going.

### Mrs. Doe Finds Assistance in Japan

63.     Mrs. Doe eventually found shelter in the residence of a Japanese woman and, weeks later, began living at a women's shelter in Japan.

64.     After Mrs. Doe fled the Defendants' home, Russell and Linda Howard sent several emails, asking Mrs. Doe for "another chance" and begging her to "come back to us." The emails stated that "Russell is very sorry about the way he treated you." (*See* Exh. B.)

### The U.S. Government Investigation and Russell Howard's Obstruction of Justice

65.     While living in the women's shelter, Mrs. Doe met with an investigator from the State Department's Diplomatic Security Service to answer questions regarding the brutal abuse she suffered at the hands of Russell and Linda Howard.  Upon information and belief, the State

11

Department's investigation is still pending.

66.    Although Linda Howard was removed from her position overseas, she remains employed by the State Department.

67.    In June 2011, despite knowing that the State Department's investigation was ongoing, Russell Howard traveled more than 8,000 miles from Virginia to Ethiopia in an attempt to locate Mrs. Doe. On or about June 15, 2011, Russell Howard went to Addis Ababa and made a telephone call – with assistance from an Amharic interpreter – to the Plaintiff's husband in Ethiopia.

68.    During the telephone conversation, Russell Howard asked the Plaintiff's husband to meet him at his hotel to discuss Mrs. Doe and her whereabouts. When he declined this invitation, Russell Howard called him back repeatedly, asking for Mrs. Doe's phone number. Mrs. Doe's husband did not provide it.

69.    On or about June 17, 2011, the Plaintiff's husband received a telephone call from the Ethiopian police, asking him to come to the station. A few days later, he went to the police station as requested and learned that Russell Howard was still looking for Mrs. Doe. The police revealed to the Plaintiff's husband that Russell Howard had contacted the Ethiopian police to request help locating Mrs. Doe and in an attempt to file bogus criminal charges against Mrs. Doe.

70.    Upon information and belief, the reason that Russell Howard is searching for Mrs. Doe is to silence her. Upon information and belief, Russell Howard seeks to terrorize Mrs. Doe and to scuttle the U.S. federal investigation.

71.    As of June 2011, Russell Howard was fully aware that his conduct and his wife's conduct were under federal investigation. By hunting for Mrs. Doe in Ethiopia and harassing her

husband, Russell Howard obstructed, attempted to obstruct, and interfered with the enforcement of applicable federal laws.

72.     Moreover, Russell Howard's recent hunt for Mrs. Doe and contact with her relative in Ethiopia have exacerbated the terror and trauma she feels from her association with Linda Howard and Russell Howard.

**Long-Term Emotional Harm Suffered by Mrs. Doe**

73.     Mrs. Doe continues to experience debilitating emotional and psychological pain because of the Howards' offenses. Mrs. Doe is constantly frightened of others. She believes it will be nearly impossible to trust anyone again.

## FIRST CLAIM FOR RELIEF

### Involuntary Servitude in Violation of 18 U.S.C. § 1584
*(Defendants Linda Howard and Russell Howard)*

74.     Mrs. Doe realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

75.     Mrs. Doe brings this claim for relief under the private cause of action provided by 18 U.S.C. § 1584, which prohibits involuntary servitude.

76.     Mrs. Doe is permitted to bring a civil cause of action under 18 U.S.C. § 1595.

77.     As alleged herein, the Defendants Linda Howard and Russell Howard held Mrs. Doe in involuntary servitude, raping and sexually abusing her and forcing her to work 80 hours or more per week.

78.     Linda Howard and Russell Howard conspired to compel Mrs. Doe to work against her will for their benefit, by the use of force, the threat of force, or the threat of legal coercion.

79.     Russell Howard's sexual brutality against Mrs. Doe forced her into involuntary servitude.

13

80.     Russell Howard's sexual violence was committed in furtherance of the couple's conspiracy to obtain labor at an unconscionably low wage level.

81.     Mrs. Doe was highly vulnerable to the Defendants' control. The Defendants exploited this vulnerability.

82.     Through such actions, Defendants directed, assisted, conspired, and acted in concert with each other to create and perpetuate a system of involuntary servitude prohibited by 18 U.S.C. § 1584.

83.     As a direct and proximate result of these actions, Mrs. Doe has sustained physical injuries and severe emotional distress and economic losses.

84.     Plaintiff is therefore entitled to recover damages in an amount to be proven at trial, including attorneys' fees and other relief that the Court may deem proper.

## SECOND CLAIM FOR RELIEF

### Forced Labor in Violation of 18 U.S.C. §1589
*(Defendants Linda Howard and Russell Howard)*

85.     Mrs. Doe realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

86.     The Defendants knowingly obtained Mrs. Doe's labor and services by patterns of abusive behavior, threats of harm and deportation, and abuse and threatened abuses of legal process as described by the forced labor provisions of 18 U.S.C. § 1589.

87.     Mrs. Doe is permitted to bring a civil cause of action under 18 U.S.C. § 1595.

88.     As alleged herein, the Defendants Linda Howard and Russell Howard held Mrs. Doe in forced labor and sexual servitude, raping and sexually abusing her and forcing her to work 80 hours or more per week.

89.     Linda Howard and Russell Howard conspired to compel Mrs. Doe to work and provide sexual services against her will for their benefit, by the use of force, the threat of force, or the threat of legal coercion.

90.     Russell Howard's sexual brutality against Mrs. Doe constituted the forced services that Mrs. Doe was compelled to provide.

91.     Defendants directed, assisted, conspired, and acted in concert with each other to create and perpetuate a system of forced labor prohibited by 18 U.S.C. § 1589.

92.     As a direct and proximate result of these actions, Mrs. Doe has sustained physical injuries and severe emotional distress and economic losses.

93.     Plaintiff is therefore entitled to recover damages in an amount to be proven at trial, including attorneys' fees and other relief that the Court may deem proper.

### THIRD CLAIM FOR RELIEF

**Trafficking with Respect to Forced Labor or Involuntary Servitude in Violation of the Trafficking Victims Protection Act of 2000, 18 U.S.C. §§ 1584, 1589, and 1590**
*(Defendants Linda Howard and Russell Howard)*

94.     Mrs. Doe realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

95.     By inducing Mrs. Doe to accept employment with them in Japan, through fraud and deception for the purposes of subjecting her to involuntary servitude and forced labor,  the Howards engaged in trafficking of Mrs. Doe in violation of 18 U.S.C. §§  1584, 1589, and 1590.

96.     Mrs. Doe is permitted to bring a civil cause of action under 18 U.S.C. § 1595.

97.     Linda Howard and Russell Howard conspired to compel Mrs. Doe to work against her will for their benefit, by the use of force, the threat of force, or the threat of legal coercion.

98.     As a direct and proximate result of the Howards' actions, Mrs. Doe has sustained

damages, including physical injury, emotional distress, and economic losses.

99.     Plaintiff therefore is entitled to recover damages in an amount to be proven at

trial, including attorneys' fees and other relief that the Court may deem proper.

## FOURTH CLAIM FOR RELIEF

### Conspiracy in Violation of 18 U.S.C. § 1594 and
### Civil Conspiracy in Violation of Common Law
*(Defendants Linda Howard and Russell Howard)*

100.     Mrs. Doe realleges and incorporates by reference each and every allegation

contained in the preceding paragraphs as if set forth fully herein.

101.     Defendants Linda Howard and Russell Howard had an agreement to accomplish

human trafficking, peonage, and/or unjust enrichment or to benefit financially from Mrs. Doe's

services through these unlawful means.

102.     Mrs. Doe is permitted to bring a civil cause of action under 18 U.S.C. § 1595.

103.     Linda Howard and Russell Howard also conspired to compel Mrs. Doe to work

against her will for their benefit, by the use of force, the threat of force, or the threat of legal

coercion.

104.     The Defendants' actions resulted in severe emotional, physical, and economic

damages to Mrs. Doe.

105.     Plaintiff therefore is entitled to recover these damages in an amount to be proven

at trial, including attorneys' fees and other relief that the Court may deem proper.

### FIFTH CLAIM FOR RELIEF

#### Obstructing Enforcement in Violation of 18 U.S.C. § 1590(b)
*(Defendant Russell Howard)*

106.   Mrs. Doe realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

107.   On or about June 15 and 17, 2011, Russell Howard contacted Mrs. Doe's husband in Ethiopia for the purpose of locating Mrs. Doe.

108.   Upon information and belief, Russell Howard sought to find Mrs. Doe to silence her and obstruct the investigation of the rapes, forced oral sex, and trafficking she had suffered in Tokyo.   Russell Howard sought to terrorize Mrs. Doe and to cause her to refuse to serve as a witness.

109.   As of June 2011, Russell Howard was fully aware that his conduct and his wife's conduct were under federal investigation.

110.   Russell Howard obstructed and attempted to obstruct, and interfered with the enforcement of the federal prohibition against trafficking, 18 U.S.C. § 1590(a).

111.   Mrs. Doe is permitted to bring a civil cause of action under 18 U.S.C. § 1595.

112.   As a direct and proximate result of Mr. Howard's actions, Mrs. Doe has sustained damages, including physical injury, emotional distress, and economic losses.

113.   Plaintiff therefore is entitled to recover damages in an amount to be proven at trial, including attorneys' fees and other relief that the Court may deem proper.

## SIXTH CLAIM FOR RELIEF

### Unjust Enrichment
*(Defendants Linda Howard and Russell Howard)*

114.   Mrs. Doe realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

115.   Mrs. Doe rendered services as a live-in domestic servant to the Defendants for several months.  Mrs. Doe worked in good faith and with the expectation that she would be fairly compensated for such services.

116.   The Howards accepted these services but failed to compensate Mrs. Doe for the fair market value of her services.  The written contract contained a term promising a monthly wage of $300.  This written term, however, falls short of the prevailing wage requirements set forth in the State Department's Foreign Affairs Manual.   The contractual wage is unconscionable.

117.   Instead of paying the Japanese minimum wage of approximately $9.99 per hour, the Howards contracted for and paid Mrs. Doe approximately $0.88 per hour.  Accordingly, the contract's salary provision is unenforceable and the Howards acted inequitably by failing to pay Mrs. Doe in accordance with the prevailing market rate.

118.   The Howards have been unjustly enriched at Mrs. Doe's expense.

119.   At all times relevant hereto, the relationship between the Howards and Mrs. Doe was one of private master and servant.

120.   Plaintiff is therefore entitled to recover damages in an amount to be proven at trial, including attorneys' fees and other relief that the Court may deem proper.

WHEREFORE, Plaintiff respectfully requests that judgment be granted as follows:

(a) Money damages for each Claim for Relief;

(b) Punitive and exemplary damages according to proof;

(c) Attorneys' fees and costs for Plaintiff against the Defendants; and

(d) Such other further relief as the Court may deem just and proper.

Plaintiff demands a trial by jury.

Respectfully submitted,

Dated: 10 / 12 / 11                    By: _____

Daniel E. Chudd
(VA Bar No. 65335)
dchudd@jenner.com
Lorelie S. Masters*
lmasters@jenner.com
Martina E. Vandenberg*
mvandenberg@jenner.com

JENNER & BLOCK LLP
1099 New York Avenue, NW, Suite 900
Washington, DC 20001
Phone: 202-639-6000
Fax: 202-639-6066

*Counsel for Plaintiff Jane Doe*

* Admission *pro hac vice* pending in this jurisdiction.