**FILED**

United States District Court

For the Eastern District of Virginia

2011 DEC -2   P 12: 40

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

Jane Doe                          Civil Action No. 1=11 CV1105

Plaintiff                          ~~Under Seal~~

   v.

Linda Howard

Defendant


Answer in a Civil Action


1. Linda Howard did not traffic Jane Doe into Japan.

2. No. Russell Howard is an Eligible Family Member (EFM).

3. No. Jane Doe speaks fluent English and has good English writing and reading ability.

4. No. Jane Doe was paid $150 per month in Yemen.

5. No. Jane Doe asked to move with Linda Howard to Japan.

6. Yes, a written employment contract was entered into. Jane Doe received all contractual items, $300 wages per month, time off each week, and the Howards self-funded medical care for employees, a safe place to live and work.

7. Linda Howard has no knowledge of this.

8. Linda Howard has no knowledge of this.

9. Untrue.

10. Jane Doe worked in Tokyo for 3 months, from December 15, 2008 until March 13, 2009. Jane Doe's employment was terminated.

11. Linda Howard has no knowledge of this.   Linda Howard voluntarily curtailed from Tokyo.

12. Linda Howard continues to be employed by the United States Department of State.

13. No.

14. Russell Howard departed the United States in June 2010.

15. Jane Doe's age is unknown to Linda Howard. Jane Doe's was in Japan on a non-resident working visa.

16. Yes. Linda Howard was posted to Tokyo. Russell Howard resided with Linda Howard in Tokyo.

17. Russell Howard is an Australian citizen residing in Australia.

18. No, Russell Howard resides in Australia.

19. Unknown, where Jane Doe was born. Unknown if/where she worked in Ethiopia.

20. Unknown when she travelled to Yemen. Unknown if she sent funds home to her husband and children.  In Tokyo, Jane Doe informed Linda Howard that previously she had been held for two months in a Turkish prison after crossing the border illegally from Beirut.  Jane Doe told Linda Howard that she had left her previous employment in Beirut after "trashing" her former employer's house.  Russell and Linda Howard felt threatened by these statements and began to question their continued employment of Jane Doe.

21. No, Jane Doe was paid $150 per month in Yemen. Russell Howard was evacuated from Yemen when Yemen went on Ordered Departure due to the terrorist bombing of both the Embassy compound and the Embassy housing. Yes, Jane Doe did not see Russell Howard again until she arrived in Japan. Yes, Jane Doe was well treated in Yemen and Japan.

22. Yes, Linda Howard <u>informed</u> Jane Doe that the United States Department of State would transfer Linda Howard to Tokyo. No, Linda Howard <u>did not offer</u> to increase her pay, Jane Doe <u>asked</u> for an increase in pay to work for Linda Howard in Tokyo. The working conditions in Japan were the same as the favourable working conditions Jane Doe experienced in Yemen.

23. No, the contract was for 18 months. No, Jane Doe has good English reading ability.

24. Under the terms of the contract, Linda Howard paid the costs and <u>initiated</u> the paperwork needed for Jane Doe travel to and employment in Japan. Linda Howard paid for Jane Doe and her household effects to Ethiopia so that Jane Doe could visit her husband and children. Jane Doe told Linda Howard that she did not visit her children while she was in Ethiopia. Jane Doe did not depart Yemen, as agreed per the contractual agreement but it was later discovered that she remained in Yemen and obtained employment with another employer. We found out after the fact that this employer terminated her employment for the following reasons "she is never on time and during the short period she worked for me, several times she did not show up. She is not reliable. Also after a week she wanted to start negotiating concerning salary raises. Also she took my home for her home and enters your apartment without prior notification and accompanied by persons I never seen before. Which I found very brutal and inconvenient. She wanted me to pay for her extra luggage although I had nothing to do with that. She started to do her laundry in my apartment without even asking. Etc, etc basically she was undisciplined and was not reliable". The Howard's paid for Jane Doe to travel to Japan.

25. Russell and Linda Howard picked Jane Doe up at the airport when she arrived in Tokyo on December 15, 2008. Jane Doe spoke no Japanese, spoke <u>fluent English, she had contacts in Japan; a man by the name of Brook,</u> no independent means of support and used public

transportation. Russell and Linda Howard spoke no Japanese, had no contacts in Japan, have no independent means of support and relied on public transportation.

26. Jane Doe worked approximately 5 hours per day over 6 days per week or approximately 30 hours per week. While not working, Jane Doe would spend her free time as she wished. Her duties included cleaning, washing clothes, ironing, assisting with the grocery shopping and being chef's assistant to Russell Howard who did the cooking.

27. As per the contract, Jane Doe pay was $300 per month. Excerpt from Embassy guide for Domestic Employees states "The Japanese Immigration Control & Refugee Recognition Act imposes no minimum salary or working hours for mission members sponsoring domestic employees. The Japanese Labour Standard Act and the Minimum Wage Act specifically excludes domestic employees from its coverage."

28. Jane Doe worked approximately 30 hours per week over 6 days. She was paid per the contractual agreement. Jane Doe had every afternoon off and all day Sunday.

29. Russell and Linda Howard self-funded health insurance for all of their employees including Jane Doe. This is a moot point since Jane Doe did not need medical attention during her employment in Japan.

30. Jane Doe did not complain of illness to Linda Howard during her employment in Japan. Jane Doe was inoculated for Flu by the United States Embassy Medical doctor. She did have a slight cold on February 21, 2009, but was not too ill to accompany the Howards' to the Tokyo Zoo on that day. February 21, 2009 was a Saturday, her normal work day.

31. Linda Howard was employed. Russell Howard worked from home and spent most of the day downstairs working at the computer. When he was not working at the computer, he was out of the apartment conducting research for his writing or attending Embassy sanctioned events.

Russell Howard and Jane Doe were rarely alone together in the apartment. Linda Howard came home for lunch every workday. Routinely, if not daily, Embassy employees were present in the apartment to perform maintenance or inspection of the old, small Japanese style apartments that were build following WWII and required constant upkeep.

32. Linda and Russell Howard respected Jane Doe's freedom of religion and cultural identity. Within a few days of Jane Doe's arrival in Tokyo, Russell Howard took her to and registered her with the Ethiopian Embassy in Tokyo. Russell Howard searched for and found a church of Jane Doe's faith in Tokyo and took her to worship. One Sunday Jane Doe and Russell Howard rendezvoused with the Ethiopian Embassy Vice-Counsel at the church service. Russell Howard took Jane Doe to worship on the rare occasions Jane Doe expressed a desire to go to church.

33. Linda Howard has no knowledge of this.

34. Linda Howard has no knowledge of this.

35. Jane Doe made numerous friends and acquaintances in Japan including compound employees, compound security guards, United States Embassy employees, United States Marines, Ethiopian Embassy officers and employees, Ethiopian employees of the Kuwaiti Embassy and the owner and staff of a local Ethiopian restaurant.

36. Linda Howard usually left for work at 8:15 in the morning and walked the two blocks to her office.

37. Jane Doe was not isolated from the outside world. She could have informed any one of her numerous friends and acquaintances of an alleged attack or need for medical attention.

38. Linda Howard has no knowledge of this.

39. Linda Howard has no knowledge of this.

40. Linda Howard has no knowledge of this.

41. Linda Howard has no knowledge of this.

42. Linda Howard has no knowledge of this.

43. Jane Doe owed no debt to the Howards. Upon her arrival in Tokyo, after her three month vacation in Ethiopia, Jane Doe was paid the additional wages stipulated in her contract. The Howards arranged for those wages to be deposited in a bank account established by Jane Doe's husband in Ethiopian expressly for that purpose. Jane Doe was free to break her contract at any time.

44. Linda Howard had a contract with Jane Doe for domestic services, nothing more.

45. Jane Doe was never a prisoner in the Howards' home. She was free to come and go as she pleased. Jane Doe had numerous friends and acquaintances. Jane Doe did not speak Japanese, neither did the Howards. Jane Doe could communicate in English or Amharic if she desired to the numerous staff and employees of the housing compound present daily. There was a housing maintenance man from Ethiopia that spoke Amharic as well as English. Jane Doe spoke to him daily.

46. Jane Doe left the house alone after lunch almost every day. Jane Doe was usually gone all afternoon, every afternoon. She also frequently left the Howards residence in the evenings after work. Linda Howard never monitored her absences from the apartment but was concerned for her safety as a prudent employer would have been when she frequently returned late.

47. Linda Howard has no knowledge of this.

48. Jane Doe was not eligible to reside in the DEQ as the Howard's residential housing had a bedroom and private bathroom for Jane Doe. The Embassy guidebook for domestic employees states "Mission members sponsoring domestic employees who a) are assigned to the Mitsui compound, or b) reside off-compound and <u>do not have a room for domestic employee in their</u>

own housing, may request a space in the Domestic Employees' Quarter (DEQ) for their domestic employees who work for a minimum of 24 hours per week for them and for other U.S. Embassy employees or affiliated organization (i.e. Employees' Welfare Association) for the remaining hours. "

49. This information and belief is untrue.

50. This information and belief is untrue. The Howards' did not isolate Jane Doe. The Howards' entertained numerous Ethiopian Embassy officials in their home and encouraged Jane Doe to seek out Ethiopian friends which were also welcomed into the Howard home. The Howards' had respect for Jane Doe's Ethiopian customs and beliefs. Jane Doe was encouraged to practice the Ethiopian coffee ceremony, a vital ritual component of Ethiopian customs. Linda Howard discovered an Ethiopian restaurant close to the Howard apartment. She introduced herself to the owner and later introduced Jane Doe to him. Jane Doe became close friends with the owner of the Ethiopian restaurant and his family. Russell and Linda Howard funded train travel and pocket money for Jane Doe's weekend visits to the restaurateur's family at their home outside Tokyo. The Howards' purchased special Ethiopian bread at great expense for Jane Doe and other Ethiopian guests in the Howard home.

51. This information and belief is untrue.

52. Linda Howard has no knowledge of this.

53. Linda Howard has no knowledge of this.

54. After lunch on Friday, March 13, 2009 Jane Doe went, as she frequently did, to visit the nearby Ethiopian restaurant.

55. Linda Howard has no knowledge of this.

56. The Howards' had plans to entertain Embassy staff and friends at their residence the evening of March 13, 2009 prior to attending a dinner at a local Japanese restaurant. Jane Doe did not return on time and Linda and Russell Howard, embarrassed, had to quickly rearrange their scheduled event and proceed directly to the Japanese restaurant instead. The Howards' had dinner at the Japanese restaurant. When they returned home, Jane Doe was at the Howard apartment. The Howards' spoke to Jane Doe about her inattention to her job and the embarrassment she had caused them that evening. The Howards' advised Jane Doe that her employment was terminated, a plane ticket would be purchased and she would be returned to her home country Ethiopia. The Howards' and Jane Doe telephoned the Counsel of the Ethiopian Embassy at home, as he was their friend, to advise him of their decision to terminate Jane Doe's employment.

57. Jane Doe had a Japanese working Visa.

58. Russell and Linda Howard jointly terminated Jane Doe's employment.

59. Nonsense.

60. Unknown.

61. When the Howards' went to bed the evening of March 13th, 2009 Jane Doe was in her room. When the Howards' woke up the next morning Jane Doe was gone.

62. Jane Doe had to pass through gates guarded by Embassy compound guards to exit the housing complex that was two blocks away from the U.S. Embassy. Jane Doe knew the way to the U.S. Embassy; she had been there many times. Jane Doe also knew the way to the Ethiopian restaurant where she had spent many afternoons and evenings.

63. Unknown.

64. Concerned for Jane Doe's safety, Emails were sent, first to her husband in Ethiopia and then to Jane Doe.

65. Investigation has concluded with no charges laid.

66. Linda Howard voluntarily curtailed from her posting in Tokyo and remains employed by the Department of State.

67. Linda Howard has no knowledge of this.

68. Linda Howard has no knowledge of this.

69. Russell Howard filed charges against Jane Doe for theft, blackmail and perjury with the police in Addis Ababa on June 16, 2011.

70. Linda Howard has no knowledge of this.

71. Linda Howard has no knowledge of this.

72. Linda Howard has no knowledge of this.

73. Linda Howard has no knowledge of this.

74. Allegations untrue.

75. Incorrect, under Title 18, U.S.C., Sec. 1584, A person can be found guilty of that offense only if all of the following facts are proved beyond a reasonable doubt: A) That the person held the victim in a condition of 'involuntary servitude'; B) That such holding was for a 'term and C)That the person acted knowingly and willfully. Jane Doe was never forced to work involuntarily, there was never a term stated for involuntary servitude and Linda Howard never acted knowingly or willfully against Jane Doe.

76. 18 USC 1595 An individual who is a victim of a violation of this chapter may bring a civil action against whoever knowingly benefits, financially or by receiving anything of value from

participation in a venture which that person knew or should have known has engaged in an act

in violation of this chapter.   Linda Howard did not participate in or knowingly benefit.

77. Untrue. Linda Howard has no knowledge of this.

78. Untrue.  Linda Howard has no knowledge of this.

79. Linda Howard has no knowledge of this.

80. Linda Howard has no knowledge of this.

81. Linda Howard has no knowledge of this.

82. Untrue

83. Linda Howard has no knowledge of this.

84. No damages should be awarded.

85. Allegations untrue.

86. Untrue

87. No basis for civil action against Linda Howard.

88. Nonsense

89. Nonsense

90. Linda Howard has no knowledge of this.

91. Untrue

92. Linda Howard has no knowledge of this.

93. No damages should be awarded.

94. Allegations untrue

95. Untrue. Jane Doe induced the Howards' to employ her.

96. No civil action should be allowed.

97. Nonsense

98. Linda Howard has no knowledge of this.

99. No damages should be awarded.

100. Allegations untrue.

101. Nonsense

102. No basis for civil action against Linda Howard.

103. Nonsense

104. Linda Howard has no knowledge of this.

105. No damages should be awarded.

106. Allegations untrue

107. Linda Howard has no knowledge of this.

108. Linda Howard has no knowledge of this.

109. Investigation concluded in March 2011, no charges were laid.

110. Linda Howard has no knowledge of this.

111. No basis for civil action against Linda Howard.

112. Linda Howard has no knowledge of this.

113. No damages should be awarded.

114. Allegations untrue

115. Jane Doe was compensated according to her contract.

116. Untrue, Jane Doe was paid according to her contract. Per the Embassy Tokyo Guidebook

for Domestic Staff Employment "The Japanese Immigration Control & Refugee Recognition

Act imposes no minimum salary or working hours for mission members sponsoring domestic

employees. However, it is highly likely that the immigration authority takes domestic

employees' compensation into consideration to determine eligibility for a visa..."

117. Untrue

118. Untrue.

119. Nonsense

120. No damages should be rewarded.

*Linda Howard*

Linda Howard

1028 S. Walter Reed Dr. #634

Arlington, VA 22204

Russlindy@gmail.com

202 445-4932

Certificate of Service

The undersigned hereby
certifies that a true copy
of the foregoing Answer in
a Civil Action was mailed
this 2nd Day of December to
Daniel Chudd from Jenner
& Block at 1099 New York Ave N.W
Suite 900 Washington D.C.
20001 - 4412.

Linda Howard
Howardl @ state. gov
Russlindy @ gmail. com
202 445 4932