**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

JANE DOE,

        Plaintiff,

v.

                                   Case No. 1:11-CV-1105-LO-TRJ

LINDA HOWARD and
RUSSELL HOWARD,

        Defendants.

**PLAINTIFF JANE DOE'S MEMORANDUM IN OPPOSITION TO
DEFENDANT LINDA HOWARD'S MOTION TO DISMISS**

Daniel E. Chudd (VA Bar No. 65335)
Sarah A. Maguire (VA Bar No. 71232)
Lorelie S. Masters (*Pro Hac Vice*)
Leah J. Tulin (*Pro Hac Vice*)
Maya D. Song (*Pro Hac Vice*)
Chavi Keeney Nana (*Pro Hac Vice* Application
Pending)

JENNER & BLOCK LLP
1099 New York Ave., N.W., Suite 900
Washington, D.C. 20001
Phone:  202-639-6000
Fax:  202-639-6066

*Counsel for Plaintiff Jane Doe*

## <u>TABLE OF CONTENTS</u>

INTRODUCTION..................................................................................................... 1

STATEMENT OF FACTS ........................................................................................ 2

ARGUMENT ............................................................................................................ 4

    **I.    THIS COURT HAS SUBJECT-MATTER JURISDICTION OVER MRS. DOE'S COMPLAINT UNDER 28 U.S.C. §§ 1331,1367 AND 18 U.S.C. §§ 3271, 1596.................. 4**

    **II.    THE COMPLAINT ALLEGES SUFFICIENT FACTS AND COGNIZABLE FEDERAL AND STATE LAW CLAIMS. .......................................................... 5**

        A.    Legal Standard ................................................................................. 5

        B.    The Complaint Adequately Pleads Claims Under 18 U.S.C. §§ 1584 and 1589 For Involuntary Servitude and Forced Labor. ......................................... 6

        C.    The Complaint Adequately Pleads A Claim for Relief Under 18 U.S.C. § 1590 for Trafficking with Respect to Involuntary Servitude or Forced Labor. .................................. 13

        D.    Mrs. Doe Has Adequately Pled Conspiracy Under 18 U.S.C. § 1594 and Virginia Common Law ............................................................................. 15

        E.    Mrs. Doe has Adequately Pled Common Law Unjust Enrichment ........................... 19

    **CONCLUSION** ...................................................................................... **22**

# TABLE OF AUTHORITIES

**CASES**                                                                                   **Page(s)**

*Adhikari et al. v. Daoud & Partners, et al.,*
  697 F. Supp. 2d 674 (S.D. Tex. 2009)……………………………………………..…….4, 16

*Bay Tobacco, LLC v. Bell Quality Tobacco Prods., LLC,*
  261 F. Supp. 2d 483 (E.D. Va. 2003)……………………………………...……………19

*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 544 (2007)……………………………………………………………………6

*Baoanan v. Baja,* 627 F. Supp. 2d 155 (S.D.N.Y. 2009)………………………………………2

*Centex Constr. v. ACSTAR Ins. Co.,*
  448 F. Supp. 2d 697 (E.D. Va. 2006)…………………………………………………19

*Chao v. Rivendell Woods, Inc.,*
  415 F.3d 342 (4th Cir. 2005)………………………………………………………...……6

*Doe v. Siddig,*
  No. 10-1256,  2011 U.S. Dist. LEXIS 104227 (D.D.C. Sept. 12, 2011)…..…………..14, 20

*Edwards v. City of Goldsboro,*
  178 F.3d 231 (4th Cir. 1999)………………………………………………………...6

*Erickson v. Pardus,*
  551 U.S. 89 (2007)……………………………………………………………………….5

*Johnson v. Portfolio Recovery Assocs., LLC,*
  682 F. Supp. 2d 560 (E.D. Va. 2009)…….....................................................................1, 6

*Kerns v. United States,*
  585 F.3d 187 (4th Cir. 2009)…………………………………………………...……6

*Kiwanuka v. Bakilana,*
  No. 10-1336, 2012 U.S. Dist. LEXIS 23093 (D.D.C. Feb. 24, 2012…..………....……12, 13, 14

*Mairi Nunag-Tanedo v. E. Baton Rouge Parish Sch. Bd.,*
  790 F. Supp. 2d 1134 (C.D. Cal. 2011)………………………………...………...12, 13, 14

*Management Enterprises v. Thorncroft Co.,*
  416 S.E.2d 229 (Va. 1992)…………..………………………………………..…......21

*Manliguez v. Joseph,*
  226 F. Supp. 2d 377 (E.D.N.Y. 2002)……………………………………………....11

*Mongold v. Woods,*
  677 S.E.2d 288 (Va. 2009)……...……………………………...……………………20

*Nossen v. Hoy,*
  750 F. Supp. 740 (E.D. Va. 1990)…………………………………………………..20

*Pelfrey v. Pelfrey,*
  487 S.E.2d 281 (Va. Ct. App. 1997)…..……………………...……………………21

*Pinkerton v. United States,*
  328 U.S. 640 (1946)…………………………………………………………..17

*Po River Water & Sewer Co. v. Indian Acres Club of Thornburg, Inc.,*
  495 S.E.2d 478 (Va. 1998)…………………………………………………………19

*R.M. Harrison Mech. Corp. v. Decker Indus., Inc.,*
  75 Va. Cir. 404 (Va. Cir. Ct. 2008)…………………………………………………19

*Shukla v. Sharma,*
  No. 07-cv-2972, 2012 U.S. Dist. LEXIS 18392 (E.D.N.Y. Feb. 14, 2012)…………8, 11, 12

*Skillstorm, Inc. v. Elec. Data Sys., LLC,*
  666 F. Supp. 2d 610 (E.D. Va. 2009)…………………………………...…..………...18

*Swarna v. Al-Awadi,*
  No. 06 Civ. 4880, 2011 U.S. Dist. LEXIS 51908 (S.D.N.Y. May 12, 2011)…….....7, 10, 14

*Taylor v. CNA Corp.,*
  782 F. Supp. 2d 182, 204 (E.D. Va. 2010)……………………………..…..…....……19

*Turner Constr. Co. v. Va. Polytechnic Inst. & State Univ.,*
  73 Va. Cir. 351 (Va. Cir. Ct. 2007)…………………………………………………20

*Tyree v. United States,*
  No. 3:09-cv-663, 2010 WL 1381424 (E.D. Va. March 30, 2010)……....………………..6

*United States v. Booker,*
  655 F.2d 562 (4th Cir. 1981)…………………………………………...……………4

*United States v. Bradley,*
  390 F.3d 145 (1st Cir. 2004)……………………………………………………10, 11

*United States v. Calimlim,*
   538 F.3d 706 (7th Cir. 2008)……………………………………..…...…9, 11

*United States v. Cummings,*
   937 F.2d 941 (4th Cir. 1991)……………………………………...………..17

*United States v. Dann,*
   652 F.3d 1160 (9th Cir. 2011)……………………………………………...10

*United States v. Djoumessi,*
   538 F.3d 547 (6th Cir. 2008)……………………………………………….17

*United States v. Harris,*
   701 F.2d 1095 (4th Cir. 1983)……………………………………………...17

*United States v. Kaufman,*
   546 F.3d 1242 (10th Cir. 2008)……………………………………………..9

*United States v. Nnaji,*
   No. 10-10598, 2011 U.S. App. LEXIS 21828 (5th Cir. Oct. 26, 2011)………..….…16, 18

*United States v. Sabhnani,*
   599 F.3d 215 (2d Cir. 2010)………………………………………..………8, 18

*United States v. Udeozor,*
   515 F.3d 260 (4th Cir. 2008)……………………………………..…..11, 17

*United States v. Veerapol,*
   312 F.3d 1128 (9th Cir. 2002)……………………………………………..8, 12

*Velez v. Sanchez,*
   754 F. Supp. 2d 488 (E.D.N.Y. 2010)……………………………………..…7, 13

*Veney v. Douglas,*
   No. 3:10cv542, 2011 WL 1637107 (E.D. Va. Apr. 29, 2011)…..…………………………20

*Walker v. Kelly,*
   589 F.3d 127 (4th Cir. 2009)……………………………………………...………5, 6

**STATUTES**

18 U.S.C. § 1581……………………………………………………………….4

18 U.S.C.§ 1584………………………………………………………….Passim

18 U.S.C. § 1589………………………………………………………….Passim

v

18 U.S.C. § 1590…………………………………………………………...…..4, 13

18 U.S.C. § 1594…………………………………………………………..4, 15, 17

18 U.S.C. § 1595…………………………………………………………….6, 15

18 U.S.C. § 1596…………………………………………………………….....4

18 U.S.C. § 3271……………………………………………………………1, 2, 4

22 U.S.C. § 7102……………………………………………………………...9

28 U.S.C. § 1331……………………………………………………………1, 4

28 U.S.C. § 1367……………………………………………………………1, 4, 5

**INTRODUCTION**

In a one-page motion to dismiss citing Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Defendant Linda Howard contends that the Court lacks subject-matter jurisdiction over this case and that Plaintiff Jane Doe has failed to state a claim upon which relief can be granted. Neither of these contentions has merit.

This Court has federal-question jurisdiction over Mrs. Doe's federal claims and supplemental jurisdiction over her state law claims under 28 U.S.C. §§ 1331 and 1367. Because Defendant Linda Howard was a State Department employee stationed abroad at the time of the acts giving rise to this Complaint, this Court has extraterritorial jurisdiction under 18 U.S.C. § 3271. Likewise, for each of Mrs. Doe's claims, the Complaint alleges sufficient facts to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Johnson v. Portfolio Recovery Assocs., LLC*, 682 F. Supp. 2d 560, 567 (E.D. Va. 2009). Indeed, the Complaint explains in detail Mrs. Howard's role in trafficking Mrs. Doe to Japan for forced labor. The Complaint describes Mrs. Howard's collaboration with her husband and co-Defendant, Russell Howard, to traffic Mrs. Doe. Once Mrs. Doe reached Tokyo, the Defendants subjected her to involuntary servitude and forced labor. Mrs. Doe suffered exploitative working conditions, threats, brutal rapes, and sexual abuse.[1]

Congress created a private right of action for trafficking victims in 2003. Since then, U.S. federal courts have considered dozens of cases involving trafficking of domestic workers for forced labor in the United States. In nearly all of these cases, complaints very similar to Mrs. Doe's Complaint survived repeated motions to dismiss.

---

[1] Russell Howard, a named defendant in the Complaint, has defaulted by failing to answer or otherwise respond to Mrs. Doe's complaint. The Clerk of Court entered default against Russell Howard on February 10, 2012, Dkt. No. 36. Mrs. Doe intends to file a motion for entry of default judgment against Mr. Howard.

Mrs. Doe's allegations of forced labor, sexual abuse, and psychological coercion are strikingly similar to allegations raised by other victims trafficked into the United States for domestic servitude.   And while Mrs. Doe was trafficked to Japan by an American diplomat, Congress has explicitly provided for jurisdiction over such cases.  *See* 18 U.S.C. §3271.

Courts have routinely upheld claims similar to those advanced by Mrs. Doe.[2]  *See e.g. Baoanan v. Baja,* 627 F. Supp. 2d 155, 159 (S.D.N.Y. 2009) (denying Defendant former Mission Representative Baja's motion to dismiss human trafficking, involuntary servitude, and forced labor claims where plaintiff alleged that she had been overworked, underpaid, underfed, isolated from the outside world, and verbally abused).  When her Complaint is construed in the light most favorable to her, as it must be at this stage of the proceedings, the allegations made in support of her claims soundly defeat Mrs. Howard's threadbare objections.

## STATEMENT OF FACTS

In April 2009, Plaintiff Jane Doe fled from the residence of Defendants Linda Howard and Russell Howard.  Linda Howard served at the U.S. Embassy in Tokyo, and her husband accompanied her to this foreign post as a dependent.  Mrs. Doe escaped from the Defendants' Tokyo apartment building one night at approximately 2:30 AM after an altercation with the Defendants.  She spent the rest of that cold and rainy night wandering through the streets of Tokyo on foot. Compl. ¶¶ 61-62.[3]  At the time of her escape, she had been in Defendants' employ for approximately one year.  Mrs. Doe began working for Defendants in Sana'a, Yemen.  She then worked for them for five months in Tokyo.  Compl. ¶¶ 10, 21.  While employed by the Howards in Japan, Mrs. Doe was forced to work under inhumane and exploitative conditions.

---

[2]  The exceptions to this rule have arisen when defendants asserted diplomatic immunity. Defendants here have not – and indeed, cannot – claim immunity from suit in the United States.
[3]  All citations to "Compl." and all references to the Complaint in this brief are to the First Amended Complaint, Dkt. No. 18.

Refused medical benefits or time off, Mrs. Doe was also sexually abused by Defendant Linda Howard's husband, Russell Howard.  She was threatened with deportation at the slightest hint of dissent, and often for no reason at all.  Compl. ¶¶ 26-30, 36, 39-40, 42, 58.

Defendant Linda Howard was the moving force behind Mrs. Doe's labor exploitation and a willing participant in her husband's sexual abuse. Compl. ¶ 23, 31, 39-41, 51.  Together, the Howards engaged in a calculated conspiracy to perpetuate Mrs. Doe's exploitation through a pattern of systematic abuse, extreme isolation, and repeated threats of deportation.  They barred Mrs. Doe from leaving the home and refused her request to move to another part of the apartment complex (a plea she made to escape repeated sexual attacks by Russell Howard).  The Defendants acted in concert to prevent Mrs. Doe from leaving their employ or reporting their abuse, threatening Mrs. Doe with detention by U.S. Embassy security guards, and deportation. Compl. ¶¶ 46-48, 56-57.

Unable to endure this treatment, Mrs. Doe fled from the Howards' residence in April 2009.  She eventually reported these crimes to the Diplomatic Security Service of the State Department.  Compl. ¶¶ 63-64.  After Mrs. Doe's escape, the Howards attempted to contact her via email, pleading for her to return.  Linda Howard apologized for her husband's behavior. Compl. ¶ 64.

Mrs. Doe filed a Complaint against Defendants Linda Howard and Russell Howard on October 12, 2011, Dkt. No.1, followed by a First Amended Complaint on November 14, 2011, Dkt. No. 18.  Defendant Linda Howard answered the Amended Complaint on December 2, 2012, Dkt. No. 27.  Mrs. Howard subsequently filed a Motion to Dismiss on February 17, 2012.

**ARGUMENT**

I.  **THIS COURT HAS SUBJECT-MATTER JURISDICTION OVER MRS. DOE'S COMPLAINT UNDER 28 U.S.C. §§ 1331, 1367 AND 18 U.S.C. §§ 3271, 1596.**

Defendant Linda Howard argues, without elaboration, that Mrs. Doe's Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) because Mrs. Doe's "claim for relief has not met the federal requirements." Motion to Dismiss ("Mot.") at 1. Defendant's bald assertion is simply incorrect.  As explained in Part II below, Mrs. Doe has pled facts to support claims against Linda Howard under statutes passed by Congress to combat involuntary servitude, forced labor, and trafficking, as well as conspiracy to commit those predicate offenses.  *See* 18 U.S.C. §§ 1584, 1589, 1590, and 1594; Compl. ¶¶ 74-113.  This Court has jurisdiction over those claims pursuant to 28 U.S.C. § 1331, which grants district courts "original jurisdiction of all civil actions arising under the . . . laws . . . of the United States."  *See, e.g.*, *United States v. Booker*, 655 F.2d 562, 566 (4th Cir. 1981) (noting the intent of Congress to "extend[] federal jurisdiction [under 18 U.S.C. §§ 1581 and 1584] to encompass these crimes despite the availability of state remedies for kidnapping and false imprisonment").  And this Court has extraterritorial jurisdiction over these crimes under 18 U.S.C. § 3271.[4]

In addition to federal claims, Mrs. Doe has raised claims against Defendant Linda Howard for conspiracy and unjust enrichment under the laws of the Commonwealth of Virginia.

---

[4] Congress amended the Military Extraterritorial Jurisdiction Act in the Trafficking Victims Protection Reauthorization Act of 2005.  That amendment extended U.S. jurisdictional reach to include human trafficking crimes committed by U.S. Government employees and their dependents while stationed abroad.  *See* 18 U.S.C. §3271.  The crimes alleged in Mrs. Doe's Complaint occurred long after the enactment date of this statute, conferring extraterritorial jurisdiction over this case.  In addition, 18 U.S.C. §1596 provides an alternative basis for jurisdiction. *Adhikari et al. v. Daoud & Partners, et al.,* 697 F. Supp. 2d 674, 683-684 (S.D. Tex. 2009) (denying motion to dismiss TVPRA trafficking claims on the ground of extraterritoriality, finding that 18 U.S.C. § 1596 applied retroactively to both criminal and civil provisions of the Act).

Compl. ¶¶ 100-15, 114-120.  Because these state law claims are so related to Mrs. Doe's federal

claims "that they form part of the same case or controversy," 28 U.S.C. § 1367, this Court has

supplemental jurisdiction over Mrs. Doe's state law claims.  *See id.*  ("[I]n any civil action of

which the district courts have original jurisdiction, the district courts shall have supplemental

jurisdiction over all other claims that are so related to claims in the action within such original

jurisdiction that they form part of the same case or controversy under Article III of the United

States Constitution.").  For these reasons, the Court should deny Defendant Linda Howard's

motion to dismiss pursuant to Rule 12(b)(1).

## II.    THE COMPLAINT ALLEGES SUFFICIENT FACTS AND COGNIZABLE FEDERAL AND STATE LAW CLAIMS.

### A.    Legal Standard

Defendant Linda Howard also has moved to dismiss Plaintiff's claims for failure to state

a claim under Federal Rule of Civil Procedure 12(b)(6).  Here again, Mrs. Howard's motion

provides no argument or explanation.  *See* Mot. at 1.  And as with her request for dismissal under

12(b)(1), the motion should be denied.

As a preliminary matter, because Linda Howard has already submitted an answer to Mrs.

Doe's Complaint, her 12(b)(6) motion should be construed as a motion for judgment on the

pleadings pursuant to Rule 12(c).  *See Walker v. Kelly*, 589 F.3d 127, 139 (4th Cir. 2009)

(construing motion to dismiss filed simultaneously with answer as a motion for judgment on the

pleadings under Rule 12(c)); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)

(explaining that because Rule 12(h)(2) permits the defense of failure to state a claim to be raised

in a motion for judgment on the pleadings, "as a matter of motions practice, the [12(b)(6) motion

filed after defendant had answered the complaint] should be viewed as a Rule 12(c) motion for

judgment on the pleadings").  As this Court has noted, "[a] motion for judgment on the pleadings

under Rule 12(c) of the Federal Rules of Civil Procedure is decided under the same standard as a motion to dismiss under Rule 12(b)(6), with the only difference being that under Rule 12(c) the court can consider the answer as well as the complaint." *Tyree v. United States*, No. 3: 09-cv-663, 2010 WL 1381424, at *2 (E.D. Va. March 30, 2010) (citing *Walker*, 589 F.3d at 139).

Thus, in considering Defendant Linda Howard's motion, this Court must accept "all well-pleaded allegations in the plaintiff's complaint as true and draw[] all reasonable factual inferences from those facts in the plaintiff's favor . . . ." *Chao v. Rivendell Woods, Inc.,* 415 F.3d 342, 346 (4th Cir. 2005).

Those facts need not be specific; rather, they must simply "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Johnson v. Portfolio Recovery Assocs.*, 682 F. Supp. 2d 560, 567 (E.D. Va. 2009), quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Erickson v. Pardus,* 551 U.S. 89, 93 (2007) (noting that "[s]pecific facts are not necessary").   Indeed, as the Fourth Circuit has explained, a court considering a motion to dismiss under either Rule 12(b)(1) or Rule 12(b)(6) must deny the motion to dismiss "if the complaint contains facts sufficient to establish subject matter jurisdiction." *Kerns v. United States,* 585 F.3d 187, 192 (4th Cir. 2009).  Because Mrs. Doe's Complaint easily meets these pleadings requirements, Mrs. Howard's motion must be denied.

**B.     The Complaint Adequately Pleads Claims Under 18 U.S.C. §§ 1584 and 1589 For Involuntary Servitude and Forced Labor.**

Counts 1 and 2 of the Complaint allege that Mrs. Howard knowingly held Mrs. Doe in involuntary solitude and obtained Mrs. Doe's labor by patterns of threats and abuse, in violation of 18 U.S.C. §§ 1584 and 1589.  Congress has passed 18 U.S.C. § 1595, permitting civil causes of action to recover for these crimes  Specifically, Mrs. Doe's Complaint alleges that Linda and Russell Howard subjected her to involuntary servitude and forced labor by engaging in a scheme

and pattern of abuse designed to make Mrs. Doe believe that she would be seriously harmed if she protested.  Compl. ¶¶ 47-49, 86.  The Complaint also alleges that Mrs. Howard abused the legal process through repeated threats of deportation and detention.  Compl. ¶¶ 39, 42, 58.  In addition, the Complaint alleges that Mrs. Doe was compelled to remain in the Howards' employ as a result of Russell Howard's rape and sexual abuse, both Defendants' restriction of Mrs. Doe's freedom of movement, and both Defendants' threats of serious harm.  Compl. ¶¶ 36, 39-40, 45-46.   These allegations state a cause of action under §§ 18 U.S.C. 1584 and 1589, respectively.

To withstand a motion to dismiss on these claims, the facts alleged in Mrs. Doe's Complaint – when viewed in the light most favorable to her – must be sufficient to show that Mrs. Howard knowingly procured and/or maintained labor from Mrs. Doe through the use of force or serious harm, threats, or through an abuse of process.  *See* 18 U.S.C. § 1589(a) (listing means by which forced labor may be carried out, including "(1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person; (2) by means of serious harm or threats of serious harm to that person or another person; (3) by means of the abuse or threatened abuse of law or legal process; or (4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint, . . . "); *Velez v. Sanchez,* 754 F. Supp. 2d 488, 498 (E.D.N.Y. 2010) (listing the elements of a forced labor claim); *see also Swarna v. Al-Awadi,* No. 06 Civ. 4880, 2011 U.S. Dist. LEXIS 51908, at *10 (S.D.N.Y. May 12, 2011) (noting "pleading requirements of slavery, forced labor, and involuntary servitude may be met where the plaintiff alleges that her labor was obtained through force or 'threats of force,' 'threats of serious harm to . . . another person,' or 'threat of. . .

7

physical injury'"); *cf. United States v. Sabhnani,* 599 F.3d 215, 241 (2d Cir. 2010) (affirming forced labor conviction where 18 U.S.C. § 1589 prohibited "knowingly provid[ing] or obtain[ing] the labor or services of a person by," *inter alia,* "threats of serious harm to, or physical restraint against, that person," "by means of any scheme, plan or pattern intended to cause the person to believe that, if the person did not perform such labor . . . that person or another person would suffer serious harm or physical restraint," or "by means of the abuse or threatened abuse of law or the legal process").

Mrs. Doe's Complaint alleges that Mrs. Howard, working together with her husband, held Mrs. Doe in conditions of involuntary servitude and forced labor.  Mrs. Howard and her husband employed not just one, but all of the means listed above.

First, Mrs. Doe has alleged facts demonstrating that Linda Howard knowingly procured Mrs. Doe's labor through the use of force and serious harm.  Defendant Linda Howard subjected Mrs. Doe to exploitative working conditions − long hours with no time off, no benefits, and restricted freedom of movement – that caused Mrs. Doe physical harm.  *See* Compl. ¶¶ 23, 27-30; *United States v. Veerapol*, 312 F.3d 1128, 1132 (9th Cir. 2002) (affirming conviction for involuntary servitude where plaintiff presented evidence of, *inter alia*, poor working conditions); *Shukla v. Sharma*, No. 07-cv-2972, 2012 U.S. Dist. LEXIS 18392, at *6-*7 (E.D.N.Y. Feb. 14, 2012) (affirming conviction for forced labor and trafficking based on exploitative working conditions, including long hours, rat-infested living conditions, and restriction of freedom of movement).  Like the *Shukla and Veerapol* plaintiffs, Mrs. Doe was forced to work between eighty (80) and ninety (90) hours per week, at an average of $0.88 per hour.  She was given no time off.  The Defendants kept her as a "virtual prisoner" inside the Howards' residence.  And

the Defendants denied Mrs. Doe medical care when she experienced kidney problems and severe colds.  Compl. ¶¶ 26-30, 45-46, 55-56.

In addition to the physical exhaustion and illness caused by these working conditions, the Howards maintained Mrs. Doe's involuntary servitude and forced labor through sexual exploitation, a "badge and incident of servitude."  *United States v. Kaufman,* 546 F.3d 1242, 1262 (10th Cir. 2008) (noting that coerced sexual acts "are covered by the involuntary servitude statute").  Indeed, Mrs. Doe's Complaint contains detailed allegations that, taken as true for these purposes, demonstrate that Russell Howard used physical force in the form of rape and sexual abuse to violate, intimidate, and isolate Mrs. Doe.  Compl. ¶¶ 36-40, 44, 48. The Complaint further alleges that Defendant Linda Howard had knowledge of and acquiesced in her husband's actions.  *See* Compl. ¶¶ 31, 33, 36-41, 51-52 (alleging that Russell Howard demanded that Mrs. Doe engage in sexual relations with him, told Mrs. Doe that she had been hired to perform sexual services, repeatedly raped Mrs. Doe, forced Mrs. Doe to engage in oral sex, told Mrs. Doe that Linda Howard approved of his behavior, and threatened Mrs. Doe with deportation if she refused to perform sexual services).

Second, Mrs. Doe's Complaint alleges that Linda and Russell Howard also perpetrated Mrs. Doe's exploitation through nonphysical, nonviolent, and indirect means.  These methods are independently sufficient to state a claim for involuntary servitude and forced labor.  *See* 18 U.S.C. § 1589(c) (defining serious harm as "any harm, whether physical or nonphysical, including psychological, financial, or reputational harm"); 22 U.S.C.§ 7102(5) (defining involuntary servitude to include acts that inflict or threaten serious harm); *United States v. Calimlim,* 538 F.3d 706, 713 (7th Cir. 2008) (holding that a statement rises to the level of threat "if a reasonable person would believe that the intended audience would receive it as a threat,

regardless of whether the statement was intended to be carried out"); *United States v. Bradley,* 390 F.3d 145, 156-157 (1st Cir. 2004) (noting that "involuntary servitude statutes are intended to reach cases in which persons are held in a condition of servitude through nonviolent coercion"), *vacated on other grounds*, 545 U.S. 1101 (2005); *cf. United States v. Dann,* 652 F.3d 1160, 1170 (9th Cir. 2011) (affirming conviction for forced labor of nanny and noting "[t]he linchpin of the serious harm analysis under § 1589 is not just that serious harm was threatened but that the employer intended the victim to believe that such harm would befall her").

Mrs. Doe's Complaint alleges that she was both explicitly and indirectly coerced into remaining in Linda Howard's employ through both physical violence and nonviolent means. Russell Howard's rape and sexual abuse left Mrs. Doe feeling dirty, degraded, and full of self-loathing. *See* Compl. ¶ 37. This emotional state only increased her already near-total isolation in a foreign country in which she knew almost no one and did not speak the language. *Id.* Mrs. Doe reasonably believed that Linda Howard knew about her husband's actions and condoned his behavior. *See id.* ¶¶ 31, 41, 44, 47-48, 49. Indeed, Mr. Howard told Mrs. Doe that Mrs. Howard supported the sexual abuse on more than one occasion. Compl. ¶¶ 35, 41, 52 ("Russell Howard also told Mrs. Doe that Linda Howard wanted to have a threesome with Mrs. Doe" and informed her that "he and Linda Howard had sex with another maid while she was drunk and passed out"). Linda Howard herself told Mrs. Doe that she should try to make Russell Howard "happy and fulfill his needs," a statement interpreted by Mrs. Doe to signal Defendant's knowledge of and support of Russell Howard's actions. Compl. ¶ 51. These incidents led Mrs. Doe to believe that Linda and Russell Howard, working together, had blocked all routes to escape the abuse. Mrs. Doe believed that she had no choice but to continue working for them. Compl. ¶ 43.

10

These allegations, which are similar to those made in other cases in which involuntary servitude and forced labor claims have been upheld, are sufficient to survive Mrs. Howard's slender motion to dismiss. *See Swarna,* No. 06 Civ. 4880, 2011 U.S. Dist. LEXIS 51908, at *11 (denying motion to dismiss forced labor and involuntary servitude claims where domestic worker alleged that defendant employer threatened her safety and that of her family if she did not remain in his employ); *Manliguez v. Joseph,* 226 F. Supp. 2d 377, 384-385 (E.D.N.Y. 2002) (denying motion to dismiss involuntary servitude claim where the plaintiff alleged facts that the defendants locked her in their apartment, confiscated her passport, forced her to work around the clock, and limited her communication with the outside world); *cf. United States v. Udeozor*, 515 F.3d 260, 265 (4th Cir. 2008) (upholding criminal convictions of Defendant husband and wife where pattern of physical, sexual, and emotion abuse maintained victim's involuntary servitude); *Calimlim*, 538 F.3d at 712 (upholding criminal conviction for forced labor based on the employers' use of indirect means of coercion, such as insinuating that the victim's undocumented immigration status could be exposed if she attempted to escape her imprisonment in their household); *see generally Bradley*, 390 F.3d at 152-153 (explaining that the fear of serious harm must be evaluated based on an individual's "special vulnerabilities," which can include background, physical and mental condition, experience, education, socioeconomic status, immigration status and other inequalities).

Finally, Linda Howard enforced Mrs. Doe's confinement though abuse of the law or legal process. *See Shukla,* No. 07-cv-2972, 2012 U.S. Dist. LEXIS 18392, at *6 (E.D.N.Y. February 14, 2012) (defining abuse of law or legal process as the "use of threats of legal action, whether administrative, civil, or criminal, in any manner or for any purpose for which the law was not designed in order to coerce someone into working against that person's will"). Mrs. Doe's

11

Complaint alleges that Linda and Russell Howard repeatedly threatened to deport Mrs. Doe or to have her detained by Embassy security if she did not comply with their wishes.  The Defendants issued these warnings after brutal rapes and sexual abuse.  Compl. ¶¶ 39, 42, 58.  The Defendants issued even more concrete threats on the eve of Mrs. Doe's escape.  *See* Compl. ¶¶ 56-59.

Threatening deportation . . . "clearly fall[s] within the concept and definition of abuse of legal process" where "the alleged objective for [such conduct] [was to] intimidate and coerce" Plaintiff into "forced labor."  *Mairi Nunag-Tanedo v. E. Baton Rouge Parish Sch. Bd.,* 790 F. Supp. 2d 1134, 1146 (C.D. Cal. 2011)(internal citation and quotation marks omitted); *see also Kiwanuka v. Bakilana*, No. 10-1256, 2012 U.S. Dist. LEXIS 23093, at *15-*16 (D.D.C. Feb. 24, 2012) (denying a motion to dismiss claims of forced labor, involuntary servitude, and trafficking where the plaintiff alleged that the defendants had repeatedly threatened to call the FBI to have the plaintiff put on a plane and deported, noting that such threats "constitute a condition of servitude induced through abuse of the legal process"); *cf. Shukla*, No. 07-cv-2972, 2012 U.S. Dist. LEXIS 18392, at *6-*7 (affirming conviction for forced labor and trafficking where Defendant threatened deportation); *Veerapol*, 312 F.3d at 1132 (affirming conviction for involuntary servitude where Plaintiff presented sufficient evidence of abuse of process in the form of threatened deportation).

As explained above, Mrs. Doe's Complaint includes detailed allegations that, when taken as true, show that Mrs. Howard knowingly placed and maintained Mrs. Doe in a position of involuntary servitude and forced labor by coercion, direct and indirect physical and psychological harm, and threats of deportation.  Because these allegations amply support claims under 18 U.S.C. §§ 1584 and 1589, Mrs. Howard's motion must be denied.

12

**C.     The Complaint Adequately Pleads A Claim for Relief Under 18 U.S.C. § 1590 for Trafficking with Respect to Involuntary Servitude or Forced Labor.**

Count 3 of the Complaint alleges that Mrs. Howard, with the cooperation of her husband, induced Mrs. Doe into employment as their domestic worker in Japan for the purpose of subjecting her to forced labor and involuntary servitude, in violation of 18 U.S.C. § 1590. Compl. ¶¶ 94-99.  Because the Complaint explains at length Mrs. Howard's role in trafficking Mrs. Doe to Japan, and the conditions of Mrs. Doe's forced labor and unlawful servitude, Mrs. Doe has adequately pleaded a claim for relief under 18 U.S.C. § 1590.

In considering a motion to dismiss a trafficking claim under 18 U.S.C. § 1590, courts generally examine the sufficiency of the pleading of the underlying forced labor or involuntary servitude claim.  *Mairi Nunag-Tanedo,* 790 F. Supp. 2d at 1147 (denying motion to dismiss trafficking claim where Plaintiff alleged sufficient facts to show that Defendants were "involved in a fraudulent scheme involving forced labor"); *Velez,* 754 F. Supp. 2d at 498 (stating that "[s]ince 'human trafficking' is defined as 'knowingly recruit[ing] . . . any person' for forced labor, . . . , it, too, requires the same showing of means [as a forced labor claim]").

Here, as alleged in Mrs. Doe's Complaint, Linda Howard "knowingly recruit[ed], . . . transport[ed] . . . [and] obtain[ed]" Mrs. Doe for the purpose of subjecting her to forced labor or involuntary servitude.  *See* 18 U.S.C. § 1590.  Linda Howard employed Mrs. Doe in Yemen and encouraged Mrs. Doe to accompany her to Japan.  Indeed, Mrs. Howard enticed Mrs. Doe to move to Japan with a promise to raise her salary from the $200 per month that she was earning in Yemen, to $300 per month.  Although Mrs. Doe did not speak English, Defendant failed to translate the contract she offered Mrs. Doe.  Mrs. Howard informed Mrs. Doe of her intended salary orally.  Linda Howard also promised Mrs. Doe that she would have time off and benefits. Compl. ¶¶ 21, 23, 28-30.  Mrs. Howard then facilitated Mrs. Doe's visa application process for a

13

Japanese work permit, paying the visa application fees and the costs of Mrs. Doe's travel to Ethiopia to retrieve her visa. Linda Howard conspired with her husband to traffic Mrs. Doe to Japan for the purpose of exploitation. Compl. ¶ 24. These allegations, which provide "detailed descriptions of [Mrs. Doe's] alleged forced labor and conditions of servitude," *Kiwanuka*, No. 10-1256, 2012 U.S. Dist. LEXIS 23093, at *16, are more than sufficient to survive a motion to dismiss.

Illustrative in this context is *Mairi Nunag-Tanedo*, in which the district court denied defendants' motion to dismiss the plaintiffs' trafficking claims. In that case, the plaintiff Filipino teachers alleged that they had been held in forced labor. According to their complaint, defendant recruiters defrauded them by forcing the teachers to pay additional recruitment fees and threatening them with deportation if they refused. 790 F. Supp. 2d at 1138-39. The *Mairi Nunag-Tanedo* court subsequently denied defendant recruiters' motion to dismiss the trafficking claims, concluding that plaintiffs had sufficiently alleged forced labor through fraud and abuse of the legal process. *Id.* at 1146-47; *Doe v. Siddig*, No. 10-1256, 2011 U.S. Dist. LEXIS 104227, at *21-23 (D.D.C. Sept. 12, 2011) (denying motion to dismiss a trafficking claim where plaintiff domestic worker alleged she had had been paid below the minimum wage, isolated in defendants' house, barred from attending school or learning English, and psychologically and physically abused by the Siddig family); *Kiwanuka*, No. 10-1336, 2012 U.S. Dist. LEXIS 23093, at *15-16 (denying motion to dismiss trafficking claim where Plaintiff "provided detailed descriptions of her alleged forced labor and conditions of servitude"). Because Linda Howard's motion to dismiss is as groundless (and contradicted by the facts alleged in Mrs. Doe's Complaint) as the defendants' motions in *Mairi Nunag-Tanedo*, *Siddig*, and *Kiwanuka*, this Court should deny the motion.

Moreover, Linda Howard's actions as alleged in Mrs. Doe's Complaint clearly sustain a claim for trafficking.  *Swarna*, No. 06 Civ. 4880, 2011 U.S. Dist. LEXIS 51908, at *11-12 (rejecting defendants' argument that trafficking involved the transport of goods or services in exchange for money, noting plaintiff had adequately pled claim under § 1590 and "need not allege that the defendants transported her in exchange for money").  Indeed, like the defendant in *Swarna*, Linda Howard recruited, transported, and obtained Mrs. Doe's labor purely for the Defendants' benefit and to satisfy Russell Howard's sexual demands.  Once in Japan, the Howards characterized their financial contributions to Mrs. Doe's employment visa and travel as a "debt" she had to repay.  They subjected Mrs. Doe to the physical, emotional, and psychological abuse described in Section II.C. above.  Compl. ¶¶ 33, 43.  Linda Howard explicitly arranged and facilitated Mrs. Doe's employment and subsequent exploitation through inhumane working conditions, physical abuse, and psychological coercion.  All of these well-pled facts support a claim for trafficking under 18 U.S.C. § 1590.

### D.     Mrs. Doe Has Adequately Pled Conspiracy Under 18 U.S.C. § 1594 and Virginia Common Law.

Count IV of the Complaint alleges that Defendant conspired with her husband to hold Mrs. Doe in involuntary servitude and coerce her into forced labor in violation of 18 U.S.C. § 1594, for which Mrs. Doe has a civil remedy pursuant to 18 U.S.C. § 1595.[5]  Defendants Linda

---

[5]   The provisions governing conspiracy were added to 18 U.S.C. § 1594 in the December 23, 2008 amendments to the Trafficking Victims Reauthorization Act of 2005.  William Wilberforce Trafficking Victims Reauthorization Act of 2008, Pub. L. No. 110-457, 122 Stat. 5044.  *See* 18 U.S.C. § 1594(b) ("Whoever conspires with another to violate section 1581, 1583, 1589, 1590, or 1592 shall be punished in the same manner as a completed violation of such section.").  Mrs. Doe arrived in Tokyo to work for the Howards on December 15, 2008.  Although the agreement between Defendants to initiate the process that led to Mrs. Doe's exploitation, isolation and abuse was made prior to December 23, 2008, the Complaint alleges that Defendants entered into subsequent agreements and undertook numerous overt acts to hold Mrs. Doe in involuntary servitude and maintain her forced labor after this time.  Accordingly, Mrs. Doe's Complaint

and Russell Howard clearly agreed to pursue an "unlawful objective" – the abuse, exploitation, and isolation of Mrs. Doe − about which Linda Howard knew and actively agreed to join.  In furtherance of these criminal acts, both Linda and Russell committed joint and individual acts. *See United States v. Nnaji*, No. 10-10598, 2011 U.S. App. LEXIS 21828, at *3 (5th Cir. Oct. 26, 2011) (noting that a conspiracy exists where "(1) two or more people agree to pursue an unlawful objective, (2) the defendant knows about the unlawful objective and agrees to join the conspiracy, and (3) at least one member of the conspiracy commits an act in furtherance of the conspiracy's objective").

Here, as alleged in the Complaint, Linda and Russell Howard conspired to employ Mrs. Doe for the purpose of subjecting her to forced labor and involuntary servitude for their personal and sexual benefit.  Linda Howard extended Mrs. Doe's contract, and facilitated her visa application process and travel to Japan.  Linda and Russell Howard both met Mrs. Doe at the Tokyo airport and took her back to their residence.  Compl. ¶¶ 24-25.  From that point on, they acted in concert – at times alone and at times in supporting roles − to ensure that Mrs. Doe lacked the means, time, information, and capacity to leave their employ.  Russell Howard raped and sexually abused Mrs. Doe, tracked her movements, and berated her for any absences.  He threatened her with deportation when she protested.  Compl. ¶¶ 31-41.  Linda Howard failed to meet her contractual obligations to provide time off and medical care, employed Mrs. Doe at an exploitative wage and under inhumane working conditions, and supported her husband's

---

adequately alleges that Linda and Russell Howard engaged in a continuing conspiracy that spanned from before Mrs. Doe's arrival in Japan to after her escape in April 2009.  *See* Compl. ¶¶ 21-25; 64-72.  In addition, the conspiracy provisions of 18 U.S.C. § 1594 are retroactively applicable because 18 U.S.C. §§ 241 and 371 criminalized the activity alleged in the Complaint prior to the passage of the 2008 Amendments to the TVPRA.  *See Adhikari*, 697 F. Supp. 2d at 683-684 (applying 18 U.S.C. § 1596 retroactively where "the kind of human trafficking in which Plaintiffs claim Defendants engaged was criminal at the time that the alleged incidents occurred").

deportation threats.  Compl. ¶¶ 29-30, 58.  Linda Howard also knew of her husband's rape and sexual abuse of Mrs. Doe.  Indeed, Linda Howard assisted her husband in perpetrating the attacks by refusing Mrs. Doe's request to relocate.  Compl. ¶¶ 31, 35, 41, 44, 47-49, 51-52.  Mrs. Howard instructed Mrs. Doe to "make [Mr. Howard] happy."  Compl. ¶ 51.  And Linda Howard apologized for her husband's behavior in attempt to lure Mrs. Doe back after her escape.  Compl. ¶ 64 ("Russell is very sorry about the way he treated you").[6]  In sum, Linda and Russell Howard – a U.S. government official and her husband – knowingly and jointly conceived of a plan to hold Mrs. Doe in forced labor and involuntary servitude in violation of the laws of the United States, acting together and individually to commit these criminal acts.  The Defendants' acts clearly support a claim of conspiracy under 18 U.S.C. § 1594.

The Fourth Circuit's decision in *United States v. Udeozor*, 515 F.3d 260 (4th Cir. 2008), demonstrates how a well-pleaded claim of conspiracy for involuntary servitude defeats a motion to dismiss, and, in fact, can sustain a criminal conviction on appeal.  In *Udeozor*, the Fourth Circuit affirmed the district court's decision to allow evidence to show that the defendants, a husband and wife, had conspired to hold a Nigerian victim in involuntary servitude through the husband's sexual abuse of the victim.  In so holding, the Court found that "abuse by defendant's co-conspirator can constitute a means of furthering a conspiracy to obtain free labor from a

---

[6] Linda and Russell Howard, as members of a conspiracy, are "responsible for acts in furtherance of the conspiracy committed by" by each of them individually, as co-conspirators.  *United States v. Djoumessi*, 538 F.3d 547, 551 (6th Cir. 2008) (affirming conviction of Djoumessi's spouse for forced labor because she conspired in the overall conspiracy by regularly "abus[ing] [the victim] for failing to meet the Djoumessis' work standards") (citing *Pinkerton v. United States*, 328 U.S. 640, 646-47 (1946)); *United States v. Cummings*, 937 F.2d 941, 944 (4th Cir. 1991) (recognizing "full breadth" of the *Pinkerton* doctrine, making "conspirators liable for all reasonably foreseeable acts of their co-conspirators done in furtherance of the conspiracy"); *see also United States v. Harris*, 701 F.2d 1095, 1102 (4th Cir. 1983) (noting where "only one conspiracy [for forced labor and involuntary servitude] had been charged and proven at trial, . . . under the law of conspiracy all co-conspirators are equally responsible for the acts of others done in furtherance of the conspiracy").

victim[.]"  *Id.* at 266; *Nnaji*, No. 10-10598, 2011 U.S. App. LEXIS 21828 at *3-4 (affirming conspiracy convictions of defendants husband and wife because they had agreed to engage their victim in forced labor and involuntary servitude through exploitative working conditions and sexual assault by the husband, and had both committed acts in furtherance of this objective); *see also Sabhnani*, 599 F.3d at 244 (affirming Sabhnani's conspiracy conviction because there was ample evidence, including circumstantial evidence, that the husband had assisted his wife in bringing victims in their home and exploiting them for the family's benefit based on a "tacit understanding" that the maids would be subjected to involuntary servitude).[7]  Mrs. Doe's Complaint alleges sufficient facts to show that Linda and Russell Howard conspired to hold Mrs. Doe in involuntary servitude and maintain her condition of forced labor through psychological, physical, and sexual intimidation.  Compl. ¶¶ 29-41, 58.  She similarly alleges that Linda Howard had knowledge of her husband's sexual abuse.  Compl. ¶¶ 48, 51, 64.  Indeed, as the cases cited above demonstrate, Linda Howard may be held liable as a co-conspirator for her husband's acts, even if she were found not to have had actual knowledge of them.  *See Udeozor*, 515 F.3d at 266.

Mrs. Doe's Complaint alleges multiple acts undertaken by Linda and Russell Howard that also support a claim for civil conspiracy under the laws of the Commonwealth of Virginia. Common law civil conspiracy in Virginia tracks the requirements under federal law, but defines a conspiratorial act as an "unlawful act, or a lawful act [carried out] in an unlawful manner" and generally requires proof that the underlying tort was committed.  *Skillstorm, Inc. v. Elec. Data Sys., LLC*, 666 F. Supp. 2d 610, 618 (E.D. Va. 2009) (defining the elements of a civil conspiracy

---

[7] Notably, the *Udeozor* Court went on to say it was "not dispositive" whether  "[Defendant wife] Dr. Udeozor was aware of the sexual abuse" . . . because [a] conspirator need not have had actual knowledge of the coconspirators or of the details of the conspiracy for a conviction of conspiracy to be sustained."  *Udeozor*, 515 F.3d at 266 (internal quotation marks omitted).

claim as "1) an agreement between two or more persons[;] 2) to participate in an unlawful act, or a lawful act in an unlawful manner; 3) an injury caused by an unlawful overt act performed by one of the parties to the agreement; and 4) that the overt act was done pursuant to and in furtherance of the common scheme"); *Taylor v. CNA Corp.*, 782 F. Supp. 2d 182, 204 (E.D. Va. 2010)("[I]n Virginia, a common law claims of civil conspiracy generally requires proof that the underlying tort was committed."). To survive a motion to dismiss, a civil conspiracy claim must at least allege "an unlawful act or an unlawful purpose." *Bay Tobacco, LLC v. Bell Quality Tobacco Prods., LLC*, 261 F. Supp. 2d 483, 499 (E.D. Va. 2003) (internal citations and question marks omitted). Linda and Russell Howard's acts in furtherance of their conspiracy against Mrs. Doe, as described above, are sufficiently pled unlawful acts undertaken for an unlawful purpose. These acts resulted in lasting psychological and emotional trauma to Mrs. Doe, creating fear and a debilitating distrust of others. Compl. ¶ 73.

### E.   Mrs. Doe has Adequately Pled Common Law Unjust Enrichment.

Count V of the Complaint alleges that Linda Howard was unjustly enriched when she failed to compensate Mrs. Doe for her labor. Under Virginia law, Linda Howard has been unjustly enriched if Mrs. Doe conferred a benefit on Mrs. Howard, with her knowledge, which she accepted and retained without compensating Mrs. Doe for its value. *R.M. Harrison Mech. Corp. v. Decker Indus., Inc.*, 75 Va. Cir. 404, 407 (Va. Cir. Ct. 2008); *see Centex Constr. v. ACSTAR Ins. Co.*, 448 F. Supp. 2d 697, 707 (E.D. Va. 2006) (using the same definition to permit recovery under the quasi-contractual principle of quantum meruit); *Po River Water & Sewer Co. v. Indian Acres Club of Thornburg, Inc.*, 495 S.E.2d 478, 482 (Va. 1998) ("To avoid unjust enrichment, equity will effect a 'contract implied in law,' requiring one who accepts and receives the services of another to make reasonable compensation for those services.").

19

Mrs. Doe's Complaint sufficiently alleges a claim for unjust enrichment under Virginia law. Mrs. Doe worked virtually around the clock for Defendants, with little to no time off. Compl. ¶ 26, 28, 45. Defendants paid her approximately $0.88 per hour, well under the prevailing or minimum wage provisions in Japan. Compl. ¶ 27, 116. Linda Howard knowingly entered into this contract for her own financial gain and to Mrs. Doe's financial detriment. Because Linda Howard received a benefit on inequitable terms, this Court must imply a contract and require Linda Howard to provide reasonable compensation for Mrs. Doe's labor. *See Nossen v. Hoy,* 750 F. Supp. 740, 744 (E.D. Va. 1990) (noting quasi-contract is the "equitable remedy thrust upon the recipient of a benefit under conditions where that receipt amounts to unjust enrichment"); *Veney v. Douglas*, No. 3:10cv542, 2011 WL 1637107, at *10 (E.D. Va. Apr. 29, 2011); *see also Siddig*, No. 10-1256, 2011 U.S. Dist. LEXIS 104227, at *26 (denying motion to dismiss claim for unjust enrichment and quantum meruit because the plaintiff had "set forth sufficient facts to render it plausible that Defendants unjustly benefited from her services by failing to pay for the reasonable value of the services provided").

It matters not that Mrs. Doe signed an express contract with Linda Howard. Although such a contract would normally preclude a claim of unjust enrichment, the contract at issue in this case is unconscionable and therefore unenforceable. *Mongold v. Woods*, 677 S.E.2d 288, 292 (Va. 2009) ("[F]or a court to award a quantum meruit recovery, the court must conclude that there is no enforceable express contract between the parties covering the same subject matter."); *Turner Constr. Co. v. Va. Polytechnic Inst. & State Univ.*, 73 Va. Cir. 351, 352 (Va. Cir. Ct. 2007) (noting that "quasi contractual doctrines are premised on the absence of a *valid* contract") (emphasis added)).

In Virginia, a contract is unconscionable if it is so inequitable as to "shock the conscience." *Mgmt. Enters. v. Thorncroft Co.*, 416 S.E.2d 229, 231 (Va. 1992) (internal citations omitted). In order to determine whether a contract is sufficiently inequitable, Virginia courts examine, *inter alia*, the "adequacy of price," or whether there is such a "gross disparity in value exchanged," as to render the contract void. *Pelfrey v. Pelfrey*, 487 S.E.2d 281, 284 (Va. Ct. App. 1997) (internal citations and quotation marks omitted). Here, Mrs. Doe worked 80-90 hours per week for Defendants. She was forced to relinquish her freedom of movement and was subjected to Defendants' unrelenting control. Compl. ¶ 26, 45. In exchange, Defendants egregiously exploited her labor, contrary to the policy elaborated in the State Department's Foreign Affairs Manual. Compl. ¶ 26-30, 116.

Defendant Linda Howard used her relative power over Mrs. Doe, exploiting Mrs. Doe's vulnerable economic position. This exploitation further supports the contention that the contract was unconscionable. Such "gross inequality in bargaining power, together with terms unreasonably favorable to the stronger party, may confirm indications that the transaction involved elements of . . . compulsion, or may show that the weaker party had no meaningful choice, no real alternative" but to enter into, and continue to labor under the terms of an unconscionable contract. RESTATEMENT (SECOND) OF CONTRACTS §208 (1981), cmt. d. Linda Howard subsequently used Mrs. Doe's contractual obligations, and the exploitation inherent in them, to perpetuate this power imbalance and to hold Mrs. Doe in forced labor.

In short, because Mrs. Doe's employment contract with Defendants Linda and Russell Howard is unconscionable in substance and exploitative in application, it is clearly void. And because Mrs. Doe has sufficiently alleged that she conferred the benefit of her labor on the Howards, a benefit they knowingly accepted at egregiously substandard wages and from which

they benefitted, Mrs. Doe is entitled to relief under a theory of unjust enrichment under Virginia

law.

## **CONCLUSION**

For the foregoing reasons, Mrs. Doe respectfully requests that this Court deny Defendant

Linda Howard's Motion to Dismiss.


Respectfully submitted,


Dated:  March 5, 2012                       By:_____/s/ Daniel E. Chudd_____
                                              Daniel E. Chudd (VA Bar No. 65335)
                                              Sarah A. Maguire (VA Bar No. 71232)
                                              Lorelie S. Masters (*Pro Hac Vice*)
                                              Leah J. Tulin (*Pro Hac Vice*)
                                              Maya D. Song (*Pro Hac Vice*)
                                              Chavi Keeney Nana (*Pro Hac Vice* Application Pending)

                                              JENNER & BLOCK LLP
                                              1099 New York Ave., N.W., Suite 900
                                              Washington, D.C. 20001
                                              Phone:  202-639-6000
                                              Fax:  202-639-6066

                                              *Counsel for Plaintiff Jane Doe*