1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

```
-------------------------------:
                               :
JANE DOE,                      :
              Plaintiff,       :
                               :
 -vs-                          :      Case No. 1:11-cv-1105
                               :
                               :
                               :
LINDA HOWARD, et al.,          :
              Defendants.       :
                               :
-------------------------------:
```

HEARING ON MOTIONS

April 20, 2012

Before:  T. Rawles Jones, Jr., Mag. Judge

APPEARANCES:

Maya D. Song and Daniel E. Chudd, Counsel for the Plaintiff

Linda Howard, pro se

2

NOTE:  The case is called to be heard at 10:47 a.m. as follows:

THE CLERK:  Jane Doe versus Linda Howard, et al., case number 11-cv-1105.

MR. CHUDD:  Your Honor, my name is Daniel Chudd.  I am with the law firm of Jenner & Block.

THE COURT:  Good morning.

MR. CHUDD:  I am here with colleague, Maya Song, on behalf of the plaintiff, Jane Doe.  And Ms. Song will be arguing the motions.

THE COURT:  All right.  And Ms. Howard is here pro se.

Let me deal with an ancillary matter first.  There has been considerable e-mail traffic in this case because of Ms. Howard's pro se status.  And let me check on the date.

All right.  In an April 15 e-mail, Ms. Howard, you said the following:  I have reason to believe that you, i.e. Nathaniel Canfield, my law clerk, and Mr. Chudd have a private or off-the-record relationship to my disadvantage.

I want to clear the air on that immediately.  It appears to me, having read the entire e-mail history of the case, that what happened here is that Mr. Chudd sent an e-mail that he didn't intend to copy Mr. Canfield on that was rather conversational in tone and made a comment about the case.  And he then sent, with a copy to you, Mr. Chudd set an apologetic

e-mail confirming that Mr. Canfield was not supposed to be copied on the first one.

And as best I can tell both from my review of the material and from talking with Mr. Canfield, that's all that happened.

And as lawyers know, and as I hope that you now understand, Ms. Howard, part of a law clerk's job is to have what are called ex parte conversations with both sides of every case about procedural matters of a variety of stripes.  Happens all day every day.  And nothing unusual and beyond that normal procedural work has occurred in this case.

So, I hope that satisfies you on that score.

MS. HOWARD:  Your Honor, thank you very much for explaining that.  And I do accept that.

THE COURT:  All right.  Thank you.

Now, let's deal with the two motions that are before the Court.  And then I want to talk, since we're all here, about the procedural posture of the case given the nature of Ms. Howard's employment.

The first motion is the plaintiff's motion for an extension of time to file an expert report.

Go ahead, Ms. Song.  I am inclined to grant the motion for reasons I was going to explain to Ms. Howard and then see where we go from there.

MS. SONG:  Thank you, Your Honor.  Maya Song for

4

plaintiff, Jane Doe.

We are moving for a slight modification to the scheduling order. Shortly after this Court issued the scheduling order, we contacted the potential expert witness that we wished to retain, and that was--

THE COURT: And you say in your papers that he is unable, you use the word "unable" --

MS. SONG: Correct.

THE COURT: -- to file the report by the originally set date. Why is the expert unable to do that?

MS. SONG: In these sorts of circumstances, before the expert can issue a report, she is going to have to interview our client. And due to her heavy work schedule and travel schedule this month, she won't be able-- She will be able to do that interview on April 26. We are, therefore, asking for an extension to May 4 so that we can review her report-- First that she has time to prepare the report after the interview, and then we can review the report for submission.

We would also note that the request for an extension will not prejudice Mrs. Howard in this case because under our proposal, Mrs. Howard will have the same amount of time to file a responsive report, and our modification will not actually affect any over discovery dates under the scheduling order.

THE COURT: When was the expert retained?

MS. SONG:  We have not retained her as of yet, Your Honor.  We hope to retain her based on this Court's granting of our request.

THE COURT:  All right.  When was the expert identified then?

MS. SONG:  We contacted her on April 3.  And when she told us at that point that she would not be able to prepare a report for us by the April 16 date, we did make an effort to contact other potential experts in this case, but none also could provide a report by the time--

THE COURT:  Well, my question is almost as succinct as Ms. Howard's.  I mean, why did you wait so long to be finding your expert?

MS. SONG:  Well, after the Court issued the scheduling order, we spent some time discussing whether we, whether expert testimony would benefit our client in this case, and also determining what kind of expert we would want to retain.  For example, expert testimony on what sort of topic would be helpful.

And then in light of Mrs. Howard's responses to our requests for documents and interrogatories in this case, it became clear to us that expert testimony would assist the fact finder in assessing the harms and injuries in this case.  And at that point we contacted Mrs. Howard to ask her if she would agree to our extension.  And initially she did say that she

would agree.

THE COURT: All right. Thank you.

All right, Ms. Howard, do you want to be heard on the motion?

MS. HOWARD: Well, sir, I believe that the attorneys, Jenner & Block, have had ample time in order to get an expert witness and have the expert witness prepare their documentation for the Court.

I was advised of this case in October of last year. And certainly Jenner & Block had been preparing long before that to bring these charges against me. So, I believe that they should have taken this into consideration long before they served me papers.

And to say that they thought about it on April 3, that's a little bit late for my liking. And I hope the Court agrees with me that I believe this should be denied.

THE COURT: Well, I take your point, Ms. Howard, and I appreciate it, but I am going to grant the motion because I find that the reasons for the delay are appropriate under the circumstances, and the delay or the extension that is being sought is relatively short, only two weeks.

And if you decide that you want to bring in expert testimony as a result of whatever this report says, then I'm going to give you time, more than two weeks, if you need it, of additional time in order to do what you decide you need to do.

7

But as I said to lawyers in the case that was heard before yours, part of the Court's responsibility is to see to it that the matter is litigated fairly and on the facts. And especially in cases where a party, plaintiff or defendant, has limited resources, it is not unusual for the lawyers or for the pro se party to wait until they're sure that something like the expense of an expert report is really necessary before engaging the expert.

So, there is no hint here that the Jenner & Block lawyers have done anything in an effort to trap you or be unfair. And as I say, I am going to give you whatever reasonable time you need under the circumstances.

So, on those findings, the motion is granted.

That takes us to the privilege log motion. And while you are at the lectern, Ms. Howard --

MS. HOWARD:  Yes, sir.

THE COURT:  -- you say in your papers that you don't have any documents that fall into the category. After all the posturing back and forth is done, in fact you have no documents that constitute communications between you and your husband.

With respect to the interrogatory, it appears to me that they're entitled to an answer to that interrogatory. And the gist of it comes down to this, I think. I am going to let Ms. Song respond to this, but I want to get to the heart of what I see is the issue.

8

Conversations, communications, whether it's an e-mail or a letter or a conversation by spoken word, between spouses are privileged as long as they are private.  And they are entitled to determine if you had any conversations with your husband about the subject matter of this litigation that anybody else was party to or that you've revealed to anybody else.  And if the answer is no, then that's the end of it.

But if they--  And they are entitled to get you under oath.  I use the phrase occasionally, "stationary target."

MS. HOWARD:  Yes, Your Honor.

THE COURT:  They are entitled to that stationary target.  And if your honest answer under oath is that none of my conversations with my husband were overheard or later revealed to or read by anybody else, then that's probably the end of it.  But I think they are entitled to that.

MS. HOWARD:  All right.

THE COURT:  Okay.

MS. HOWARD:  Yes, sir.

THE COURT:  So, let me hear then from Ms. Song whether they contend they're entitled to anything more than that, and we'll see where we go.

MS. SONG:  Thank you, Your Honor.  On the motion to compel a privilege log, our position is that we are entitled to a log for all documents that Mrs. Howard is claiming privilege over.  And that's under the Federal Rules and also the

9

precedent that governs this--

THE COURT: Well, what she has said is that she doesn't have any such documents. Which, if she says that under oath, then I think that's the end of it.

MS. SONG: Your Honor, Mrs. Howard has repeatedly-- This is the first time in her opposition to this motion that she has said that. Repeatedly she has asserted and invoked the privilege as a basis to withhold documents from us. She has said that in her responses to our requests for documents, she has invoked the privilege multiple times.

She has also said in her communications to us that she will not be giving us any documents between herself and her husband.

We also have very good reason to suspect that she is in communications with her husband about this case.

THE COURT: I don't doubt it.

MS. SONG: You know, she and Mr. Howard have separate e-mail accounts. They are active e-mail users. They have both e-mailed our client regarding the incidents --

THE COURT: All right, Ms. Song--

MS. SONG: -- alleged in the complaint.

THE COURT: I am going to let you get that stationary target. There may be something that I have missed here, but I am not going to make a pro se defendant jump through unnecessary hoops if there are no discoverable documents.

The solution may be to require Ms. Howard to submit a supplemental written response to your document requests, parsing out a little more clearly than she might have in the past, and I haven't studied them, what documents that she has that aren't spousal communications; what, if any, and she says there are none, documents that are spousal communications; and whether anyone else has had access to any spousal communications that might exist.

It seems to me that that's the way to get at the dispute that is before me.

MS. SONG:  And then in that case, we would just ask the Court to confirm that Mrs. Howard will then categorically waive any privileges for the documents that she does have.  So that later she cannot then claim that these documents were privileged and then withhold them from us on that basis.

THE COURT:  Well, if it's a spousal communication, I am not going to ask her to waive the privilege.

MS. SONG:  If she has documents that are responsive but that she is withholding from us on the basis of privilege, we're just asking that she either invoke the privilege now or waive the privilege.

THE COURT:  Well, I appreciate that.  Let me talk to Ms. Howard again, please.

I confess to both of you, I haven't studied the document requests themselves.

11

Ms. Howard, do I understand correctly that you don't have any documentary communications between you and your husband?  Now, that includes e-mails, all kinds of stuff.  And if you do have e-mails where nobody else has seen them, then they are still privileged.

But let's get this sorted out right now --

MS. HOWARD:  Yes, sir.

THE COURT:  -- before we have a further misunderstandings between you and the plaintiff's lawyers.

MS. HOWARD:  Well, Your Honor, I apologize, but I don't really understand what they're trying to get from me because of course my husband and I talk, we're married.

So, how could Jenner & Block expect that I would not talk to my husband about anything?  We're married.  I don't--

THE COURT:  Well, I don't think they expect that. But one of the ways that we get to the facts of a case, and whether it's a case like this or an automobile accident case, is that each side serves on the other a request that you produce documents that fall into certain described categories.

And if the documents are relevant to the subject matter of the litigation and they're not privileged, and leaving aside burdensomeness if you want somebody to go search a warehouse full of paper or something, if they are relevant and if they are not privileged, then they are supposed to be produced.

12

So, what they were entitled to in response to their document requests was a statement from you on Category 1, whatever it is, either I don't have any documents that fall under this category; or, I do have some and I will send you copies; or, I do have some, but they all constitute communications between me and my husband and nobody else has seen, so they are privileged and I am not going to give them to you.

I mean, they are entitled, under the circumstances of this case they are entitled to basically one of those three responses to each of their document requests.

MS. HOWARD:  Yes.

THE COURT:  And if you can do that and then send them copies of anything that they are entitled to under that standard, I think that will solve the problem.

MS. HOWARD:  Yes, Your Honor.  I don't have anything that I consider relevant, but I will do my best to--

THE COURT:  Whether you consider it relevant is not the standard.  If they think it's relevant and if it's relevant to the subject matter of the litigation, and I frequently have this problem on Fridays with lawyers and occasionally somebody representing themself, what the people on one side of the courtroom think is relevant, you have people on the other side of the courtroom think it is completely irrelevant.

If it's relevant on their theory of the case, then

13

they're entitled to it whether you think it's relevant or not.

So, what you need to do is to read objectively, not through the lens of your beliefs, read objectively each document request and give them one of those three answers: Yes, I have some of this, and even though I don't think it's relevant, I am going to give it to you; no, I don't have anything that falls into this category; or, yes, I have some, but it's privileged.

And in that case, then they are entitled to a privilege log. They are entitled to a listing of the documents and a statement from you that it is privileged because nobody else but you and your husband have seen it.

MS. HOWARD: Thank you, Your Honor.

THE COURT: That's where we are.

MS. HOWARD: Off the top of my head, I would have to say that, no, I don't have any documents that fall under those categories. But I will certainly look--

THE COURT: Okay. Well, what I want you to do and what I am going to require you to do is to go back and reread their document requests and give them a supplemental answer. Now that you and I have had this conversation, give them a supplemental answer that meets the standards that I have set out this morning.

MS. HOWARD: Thank you, Your Honor, I will do that.

THE COURT: Okay, thank you. All right, so to that--

14

Yes, Ms. Song.

MS. SONG:  May I make a point, Your Honor?

THE COURT:  Sure.

MS. SONG:  That is entirely satisfactory to us, and thank you for that.

Just one point on spoliation.  To the extent that Mrs. Howard is saying that she doesn't have those documents under her control because she has deleted them or destroyed them, we just want to put on the record that we did tell her at the beginning of this litigation that she had to retain and preserve all documents.  If she has--

THE COURT:  Okay.  And she is nodding her head, so let's make sure that there is no misunderstanding about that too, Ms. Howard.

As to each category of documents, assuming that it's correct, give them an affirmative statement that you haven't gotten rid of anything that falls into each of these categories.

MS. HOWARD:  Yes, sir.  I understand that completely.

THE COURT:  Okay.  All right.  Good, thank you.

Now, Ms. Howard, help me--  Do you need to make some more notes?

MS. HOWARD:  No, sir, I'm fine.

THE COURT:  Help me understand better than I do what your travel situation is.  I understand that you are posted at

15

some point to a foreign country?

MS. HOWARD:  Well, I am here in Washington at the present time.  And I have been doing some TDYs since the beginning of this year.  But currently I am here in Washington. I had to take annual leave, of course, to come to court today.

THE COURT:  Okay.  Well, you expect to be here--  I don't want to put words in your mouth.  I started to say most of the time for the foreseeable future.

Do you know now of periods when you will definitely be out of the country?

MS. HOWARD:  No.  I don't have any, I usually don't have any indication when it's going to happen.

THE COURT:  Okay.  There was some back and forth between you and the Jenner & Block lawyers about when your deposition was going to be taken.

MS. HOWARD:  Yes, sir.  I was quite surprised about that, Your Honor, because--

THE COURT:  Well, what's the situation there?  Has it been taken yet?

MS. HOWARD:  No, sir, it has not.

THE COURT:  Okay.  Do you all know when you're going to be ready to take her deposition?

MR. CHUDD:  Your Honor, we're still expecting documents of some sort from Ms. Howard.  And I think after some further discovery is done, we intended, I think even in our

16

initial call with you, we mentioned we had intended to take it towards the latter part of the discovery period.

So, I would anticipate in the late June, I am sorry, late May or early June time period. We're planning to provide a notice of deposition probably in the next week, try to set out that particular date for it.

THE COURT: Okay. All right. Ms. Howard, you have some indirect control over that because the sooner you get done what I have asked you to do today, what I have told you to do --

MS. HOWARD: Yes.

THE COURT: -- with respect to the documents, the sooner they'll be in a position to be ready to take your deposition. And then you all can pin down a date.

And you all need to understand, as soon as she gets you the documents, you need to plan to take her deposition relatively soon. Because if you wait until the end and then all of a sudden she gets, through no fault of her own-- What's the phrase? TDY?

MS. HOWARD: Yes, sir.

THE COURT: If she gets sent out of the country, then that's going to create a problem. So, enough said.

MR. CHUDD: Thank you, Your Honor.

THE COURT: All right. All right, I think we have done what we can usefully do today.

17

MS. HOWARD:  Well, Your Honor please, I have gone through my paperwork, and I did bring some documents that I think might be relevant.  Is it appropriate for me to present them to you now?

THE COURT:  It's not really appropriate for you to present them to me at all unless there is a dispute over them.  But are they originals or copies?

MS. HOWARD:  Well, I have found originals, but I did make copies of everything that I found.

THE COURT:  Okay.  Well, I think that if you can give them the copies, then that may go a long way to resolving whatever misunderstandings there are.

But you still, when you do that supplemental document response that I'm talking about--

MS. HOWARD:  Yes.

THE COURT:  Say in there where it is appropriate, this is part of what I gave you at the courthouse on April 20.

MS. HOWARD:  Okay.

THE COURT:  Make your record so that you are protected.

MS. HOWARD:  Yes.  Thank you, Your Honor.

THE COURT:  Okay.

MS. HOWARD:  Also, I am very sorry, and if it's inappropriate to bring this up, please tell me, but there seemed to be some, quite a lot of discourse back and forth and

18

hard feelings about my husband officially being served.  And Jenner & Block kept saying that it was the marital home.

So, what I did yesterday to try to make my point to the Court and hopefully to Jenner & Block is I went down and got a copy of my current lease for the apartment.  And the current lease shows that the lease is in my name.  And it does have my signature on it as the only lease holder and the only member of the household.

THE COURT:  Right.

MS. HOWARD:  Would it be appropriate to present that at this time?

THE COURT:  Not to me today, but when that issue is ripe for a decision, whether it's on motion for the default judgment or whatever else is going on, and I know there has been some other motions filed, that's something that you will want to ask Judge O'Grady to consider when he hears that motion.

MS. HOWARD:  Thank you.  All right, I will keep ahold of this.  This is the originals that I got from my leasing office yesterday.

THE COURT:  All right.  So, yes, make a couple copies of that, one for them and one for Judge O'Grady.

MS. HOWARD:  Yes, thank you.

THE COURT:  All right.  All right, thanks to all of you.

19

I see some other folks here who may or may not be expecting to have a case called.  I have now completed my docket.

Marshal, can you check with these folks and see if they are in the right courtroom?

You all are free to go.

MS. HOWARD:  Thank you very much, Your Honor.  I appreciate it.

THE COURT:  Thank you, Ms. Howard.

NOTE:  The hearing concluded at 11:13 a.m.

-------------------------------------------------

C E R T I F I C A T E  of  T R A N S C R I P T I O N

I hereby certify that the foregoing is a true and accurate transcript that was typed by me from the recording provided by the court.  Any errors or omissions are due to the inability of the undersigned to hear or understand said recording.

Further, that I am neither counsel for, related to, nor employed by any of the parties to the above-styled action, and that I am not financially or otherwise interested in the outcome of the above-styled action.

/s/ Norman B. Linnell
Norman B. Linnell
Court Reporter - USDC/EDVA