RECEIVED
MAILROOM
SEP 1 9 2012
CLERK U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

1:11cv1105

CLERK'S OFFICE
U.S. DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
401 COURTHOUSE SQUARE
ALEXANDRIA, VIRGINIA 22314-5798

OFFICIAL BUSINESS

NIXIE       2011 1        09/16/12
     RETURN TO SENDER
     UNABLE TO FORWARD
     UNABLE TO FORWARD
     RETURN TO SENDER

Hasler

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

FILED
SEP - 4 2012
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | |
|---|---|
| JANE DOE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No.: 1:11-cv-1105 |
| ) | |
| LINDA HOWARD, et al., ) | |
| ) | |
| Defendants. ) | |

## ORDER

Before the Court is the Report and Recommendation of the Magistrate Judge dated August 7, 2012, recommending entry of a default judgment against Linda and Russell Howard ("Defendants") (Dkt. No. 119). Defendants have not filed any objections to the Report and Recommendation.

The Court conducted a *de novo* review of the evidence in this case and adopts and incorporates the findings and recommendation of the Magistrate Judge.[1] Accordingly, it is hereby

ORDERED that Defendants are liable for involuntary servitude in violation of 18 U.S.C. § 1584; forced labor in violation of 18 U.S.C. § 1589; trafficking with respect to forced labor or involuntary servitude in violation of the Trafficking Victims Protection Act of 2000, which is the subject of 18 U.S.C. §§ 1584, 1589, and 1590; Conspiracy in violation of 18 U.S.C. § 1594 and civil conspiracy in violation of common law; and unjust enrichment. It is further

ORDERED that Defendant Russell Howard is additionally liable for obstructing enforcement in violation of 18 U.S.C. § 1590(b).

---

[1] The subsequent damages Order contains a more thorough discussion of the facts as they relate to each of the Counts within the Amended Complaint.

The Court held a trial as to the amount of damages suffered in relation to Defendants' potential liability on August 8, 2011. The Court's ruling on damages will be the subject of a subsequent order.

September 4, 2012
Alexandria, Virginia

/s/
Liam O'Grady
United States District Judge



IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| JANE DOE, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No.: 1:11-cv-1105 |
| LINDA HOWARD, et al., | ) |
| Defendants. | ) |

## OPINION

The Court adopted the Report and Recommendation of the Magistrate Judge (Dkt. No. 106), entering default against Defendants Linda and Russell Howard and in favor of Plaintiff Jane Doe. As a result, the Defendants are liable for the counts alleged in Plaintiff's Amended Complaint (Dkt. No. 18). On August 8, 2012, the Court held a trial on the discrete issue of damages. Defendants failed to appear at the trial. The Opinion herein details the Court's findings related to damages, and finds that Plaintiff is entitled to a total damages award in the amount of $3,306,468.

### I. Background

1. Under Count 1, both Defendants were found liable for holding Plaintiff in involuntary servitude in violation of 18 U.S.C. §1584. Mrs. Doe was raped, sexually abused, and forced to work 80 hours or more per week. At trial, Plaintiff testified that Russell Howard raped her at least four times, that he forced her to perform oral sex approximately ten times, and that he repeatedly sexually assaulted her. Plaintiff testified that Linda Howard was complicit in her husband's sexual abuse, telling Plaintiff that she should gratify Russell Howard and make Russell happy. Mrs. Howard also refused Mrs. Doe's request

1

to relocate away from Mr. Howard, to a different room within the U.S. Embassy compound. In addition, the Howards used nonphysical force, such as isolation and threats of deportation, to coerce Mrs. Doe into servitude.

2. Under Count 2, both Defendants were found liable for holding Plaintiff in forced labor in violation of 18 U.S.C. § 1589. The Howards entered into a scheme to induce Mrs. Doe to travel from Yemen to Japan for the purpose of forcing her to perform involuntary labor and sexual services. Russell Howard used physical force to restrain Mrs. Doe. The Howards psychologically manipulated Mrs. Doe to compel her labor and services. The Howards limited Doe's contact with the outside world, and verbally, physically, and mentally abused her.

3. Under Count 3, both Defendants were found liable for trafficking with respect to forced labor or involuntary servitude in violation of the Trafficking Victims Protection Act of 2000 ("TVPA"), 18 U.S.C. §§ 1584, 1589, and 1590. The Defendants recruited Mrs. Doe to move from her previous employment with them in Yemen, to a foreign country, thousands of miles away, where they held her in involuntary servitude and forced labor. Defendants induced Mrs. Doe to move with them by creating false trust, and by promising her that she would have benefits that would make her trip worth her while. For example, the Howards told Mrs. Doe that she would have a day off each week, health insurance, and a safe place to live and work.

4. Under Count 4, both Defendants were found liable for conspiracy in violation of 18 U.S.C. § 1594 and civil conspiracy in violation of the common law.

5. Under Count 5, Defendant Russell Howard was found liable for obstructing enforcement in violation of 18 U.S.C. § 1590(b). Howard flew to Ethiopia in June 2011 and contacted

*23-25 (S.D.N.Y. Feb. 21, 2012); *Mazengo v. Mzengi*, 2007 U.S. Dist. LEXIS 99377, *23-24 (D.D.C. Dec. 20, 2007). A plaintiff may recover multiple emotional distress awards for different violations of the TVPA. *See Shukla*, 2012 U.S. Dist. LEXIS 18392, at *36 (noting that the "jury could have rationally split the harms for forced labor and trafficking into those flowing from the services obtained through defendants' compulsion and those flowing from the conditions of harboring to which plaintiff was subjected"). Here, Mrs. Doe is entitled to two discrete emotional distress awards: one for distress suffered due to her forced sexual servitude to Mr. Howard, and the other due to her forced labor as a domestic worker for the Howards. "In determining the measure of recovery for non-pecuniary harms, the court should examine the duration and intensity of the emotional distress, which in turn requires that the court consider 'all relevant circumstances . . . , including sex, age, condition in life and any other fact indicating susceptibility of the injured person to [the] type of harm.'"*Mazengo*, 2007 U.S. Dist. LEXIS 99377, at *23 (quoting Restatement (Second) of Torts § 905 (1979)).

### i. Forced Sexual Servitude

The Howards forcibly subjected Mrs. Doe to sexual servitude. Russell Howard verbally tormented Mrs. Doe, and early after the move to Japan, he demanded that Mrs. Doe engage in sexual relations with him. He mentioned that the Howards had had several previous domestic workers from whom he demanded sex, including threesome sexual contact with both of the Howards. He told Mrs. Doe that prior workers who refused to comply with his requests had been fired. He kept Mrs. Doe from practicing her religion, the one exercise in which she found solace in the midst of her unfortunate surroundings. Eventually, Russell Howard raped Mrs. Doe four times, forced her to perform oral sex on him approximately ten times, and sexually assaulted her. Linda Howard was complicit in her husband's sexual abuse, and refused Mrs. Doe's request to

4

relocate to a different room within the U.S. Embassy compound. She told Mrs. Doe that Mrs. Doe should try to make Russell Howard happy and fulfill his needs.

At trial, Mrs. Doe testified that as a result of the Howards' actions related to the sexual assaults, she suffered from anxiety attacks, depression, insomnia, an inability to concentrate or complete tasks, and traumatic distress following her escape from the Howards' home in Tokyo. She continues to suffer severe emotional trauma. The experience has also damaged her current marriage and sexual relationship with her husband. Mrs. Doe testified that she has no self-confidence and that she lives in fear and believes it will be nearly impossible to trust anyone again. The damages expert confirmed these symptoms as typical for someone subjected to the type of abuse to which Mrs. Doe had been a victim.

Damages in other cases involving sexual assaults vary greatly. In *Buhalo v. City of Philadelphia*, the district court affirmed a judgment of $1,315,000 in compensatory damages against two police officers whom plaintiff alleged had raped her. No. 03-4727 (E.D. Pa. Nov. 9, 2006). Plaintiff claimed that two police officer defendants approached her outside of a convenience store and asked her to get into their patrol car. Once inside the car, the officers drove her to a vacant parking lot and took turns raping her.

In *James v. Wellham*, a defendant police officer stopped the plaintiff's car on the ostensible suspicion of driving while intoxicated. 104 F.3d 620 (4th Cir. 1997). Instead of driving the plaintiff home as promised, the police officer took plaintiff to a parking lot and forcibly raped her. The jury awarded compensatory damages in the amount of $650,000. In *Meyer v. Nava*, plaintiff was awarded $750,589 in compensatory damages. No. 04-CV-4099, 2007 U.S. Dist. LEXIS 77556 (D. Kan. Oct. 17, 2007). In *Meyer*, the plaintiff was initially arrested for driving under the influence and taken to a county jail, where the acting shift

supervisor took the intoxicated plaintiff to a room and raped, sodomized, and sexually battered her.

Like the plaintiff in these cases, Mrs. Doe trusted Mrs. Howard, a U.S. government official, and her husband. And, in Mrs. Doe's case, the incidents of rape were numerous and repeated. In addition, Mrs. Doe had a prior relationship with the Defendants, establishing a deeper relationship of trust, before the incidents of rape occurred.

Based on these comparisons, the Court finds that an award for compensatory emotional distress damages relating to the forced sexual servitude in the amount of $1,250,000 is appropriate.

### ii. Forced Labor as a Domestic Worker

In recent cases, Courts have ordered or affirmed emotional distress damages relating to forced domestic labor of trafficking victims ranging from $415 to $800 for each day of forced labor. For example, in *Shukla*, the plaintiff was approached in India about working in an ashram in the United States. 2012 WL 481796, at *8-9. Although certain promises were made regarding plaintiff's salary and living conditions, plaintiff's living space in the ashram was cramped, dirty, and infested with rats. His typical work day began at 5:00 a.m. and ended at 10:00 p.m. Plaintiff did not eat dinner until 11:00 p.m. Defendants forced plaintiff to work as a priest and perform janitorial work, they monitored his movements and privacy, and they confiscated his passport. As a result, plaintiff was awarded $1,000,000 in compensatory damages.[1] *Id.* at *34.

In *Fernandez v. Hayes*, the plaintiff was awarded $500 a day in compensatory damages after defendants induced her to come to the United States from Kuwait based on a number of false promises. No. W-11-CA-137 (W.D. Tex. Apr. 27, 2012). After her arrival, plaintiff was

---

[1] The plaintiff was subject to three-and-one-half years of compelled labor. The compensatory damages award amounts to approximately $780 a day.

6

forced to work more than forty hours a week as a live in maid. In *Gurung v. Malhotra*, a seventeen-year-old girl was brought to the United States and forced to work sixteen hours per day, seven days per week. 2012 U.S. Dist. LEXIS 40970, at *5. Part of her obligations included giving the defendant a daily massage—a chore which made her extremely uncomfortable. Plaintiff was awarded approximately $500,000 in emotional distress damages for the approximately forty months she worked for the defendants.[2] *Id.* at *25.

At trial, Mrs. Doe testified that she was induced to travel to from Yemen to Japan with the Howards as a house cleaner. Like the examples detailed *supra*, Mrs. Doe's move was based on a number of false promises. The Howards told her that her salary would increase from $200 to $300 a month, and that she would have a day off each week, health insurance, the ability to travel home on vacation, and a safe place to live and work. Apart from the sexual abuse, the Howards forced Mrs. Doe into servitude by using isolation and threats of deportation.[3] After moving Mrs. Doe thousands of miles from her family, to a country whose language she did not know, the Defendants knew that Mrs. Doe depended on them entirely for her support. The Howards controlled all aspects of Mrs. Doe's life in Tokyo, including limiting her contacts with the outside world, monitoring her telephone calls,[4] and generally forbidding her from leaving the house without being accompanied by one of them. Mrs. Doe was a virtual prisoner in the Tokyo apartment, and she was berated if she took too long to run short errands. She was never given

---

[2] This amounts to approximately $410 a day.

[3] Mr. Howard threatened to deport Mrs. Doe the night before she escaped the Howard residence. Mrs. Doe asked Linda Howard to intervene, but Mrs. Howard indicated that she supported Mr. Howard's decision. That evening, the Howards told Mrs. Doe that she would be deported the following morning. As a result, Mrs. Doe fled the Howard residence in Japan at approximately 2:30 a.m.

[4] Mrs. Doe testified at trial that she made an attempt to report the Howards' conduct to the Ethiopian Embassy. During this phone call, Russell Howard picked up the second phone downstairs, interrupted Mrs. Doe's call, and told the Embassy officer that Mrs. Doe was lazy and that the issue would be resolved the following day. Mrs. Doe fled the Howard residence following Russell Howard's interference with her attempt at a cry for help.

time off from work; in fact, she worked every day, totaling approximately 80 to 90 hours per week. She was also denied medical care when she experienced kidney problems and severe colds. Mrs. Doe worked for the Howards in Japan from December 15, 2008 until she escaped around March 15, 2009. As a result of this experience, Mrs. Doe represented that she continues to experience debilitating emotional and psychological pain. Mrs. Doe is constantly frightened of others. She believes it will be nearly impossible to trust anyone again.

Based on these comparisons, the Court finds that an award for compensatory emotional distress damages relating to the forced labor in the amount of $500 is appropriate. Mrs. Doe worked for the defendants for approximately three months.[5] She is entitled to $44,500 in compensatory damages for forced labor and trafficking.

### b. Punitive Damages

Punitive damages are available under the TVPA because the Act's "civil remedy provision creates a cause of action that sounds in tort." *Ditullio*, 662 F.3d at 1096. "[P]unitive damages are warranted when the defendant is found liable for conduct involving some element of outrage similar to that usually found in crime." *Id.* at 1097 (internal quotations omitted). Punitive damages awards should be based on "the degree of reprehensibility of the defendant's conduct . . . and should reflect the enormity of [the defendant's] offense." *BMW of N. Am. v. Gore*, 517 U.S. 559, 575 (1996) (internal quotations omitted). Other factors courts should consider in awarding punitive damages include whether: "the harm was physical rather than economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the conduct involved repeated actions or was an isolated incident; and [whether]

---

[5] Mrs. Doe worked approximately 89 days, from December 15, 2008 until March 14, 2009. She escaped in the early morning on March 15, 2009.

8

the harm resulted from intentional malice, trickery, or deceit, or mere accident." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 437 (2003) (citing *Gore*, 517 U.S. at 576-77).

Here, the crime, involving sexual assaults, forced labor, and trafficking is particularly depraved. The harm was physical, it involved the intentional disregard for the health and safety of Mrs. Doe, it was repeated—involving approximately fourteen instances of forced sexual acts, and the harm was planned with forethought and intentionally inflicted upon Mrs. Doe.

In addition to the horrible circumstances relating to the sexual assaults, forced labor, and trafficking, Mr. Howard also traveled more than 8,000 miles from Virginia to Ethiopia in an attempt to locate Mrs. Doe, even knowing that the State Department's investigation into the trafficking matter was ongoing. Russell Howard telephoned Mr. Doe and asked him to meet with Mr. Howard at a hotel to discuss Mrs. Doe and her whereabouts. After Mr. Doe declined, Russell Howard called him back repeatedly. A couple of days later, Mr. Doe learned that Russell Howard had contacted the Ethiopian police to request help in locating Mrs. Doe. Howard also attempted to file bogus criminal charges against Mrs. Doe. These attempts at contact exacerbated Mrs. Doe's trauma and her ongoing fear.

None of the civil judgments discussing punitive damages amounts under the TVPA are analogous to Mrs. Doe's case in that none have involved forcible rapes or sexual assaults. Thus, the Court considers not only punitive damages awards in TVPA cases, but also punitive damages awarded in sexual abuse cases. In *Canal v. Dann*, a case that did not involve sexual abuse, the district court awarded a punitive damages award equal to the compensatory damages award—$309,406.41—after finding that the defendant "acted with a conscious disregard for [plaintiff's] right to be free from involuntary servitude and [the defendant] intentionally misrepresented facts for the purpose of depriving her of this right." No. 09-03366, 2010 U.S. Dist. LEXIS 97856, *11

(N.D. Cal. Sept. 2, 2010). In *Waxman v. Bough*, the plaintiff, at age six, was repeatedly sexually assaulted by his sixteen-year-old babysitter. No. 1:07-CV-01180 (E.D. Va. June 11, 2008). The jury awarded $2,250,000 in punitive damages. In *Buhalo v. City of Philadelphia*, the jury awarded $3,500,000 in punitive damages for a single incident of rape. No. 03-4727 (E.D. Pa. Nov. 9, 2006). Mrs. Doe's case involves four incidents of rape and multiple incidents of forced oral sex.

In light of the Howards' intentional egregious and outrageous conduct, and the fact that Mrs. Doe continues to live in a constant state of terror, the Court finds that an award in the amount of $2,000,000 is appropriate.

### c. Wage Restitution and Unjust Enrichment Damages

The TVPA also mandates restitution for violations of the Act, in an amount to account for the full value of the victim's losses. 18 U.S.C. § 1593(b)(1). The full amount of the victim's losses includes costs incurred by the victim for

(A) medical services relating to physical, psychiatric, or psychological care;

(B) physical and occupational therapy or rehabilitation;

(C) necessary transportation, temporary housing, and child care expenses;

(D) lost income;

(E) attorneys' fees, as well as other costs incurred;

(F) any other losses suffered by the victim as a proximate result of the offense; and

(G) the greater of the gross income or value to the defendant of the victim's services or labor or the value of the victim's labor as guaranteed under the minimum wage and overtime guarantees of the Fair Labor Standards Act.

18 U.S.C. § 1593(b)(3) (referencing § 2259(b)(3)). Though the Fair Labor Standards Act ("FLSA") does not have extraterritorial reach, it does provide a standard methodology under which to calculate damages for forced labor, and it is the methodology Congress has chosen to use under the TVPA framework. Notably, Congress did not provide an exception to using FLSA standards when it expanded the TVPA's reach to extraterritorial government employees and their dependents serving abroad. *See* 18 U.S.C. § 3271.

FLSA restitution is calculated based on the minimum hourly wage in effect at the time of employment, less any payments made to the Plaintiff by Defendants. Mrs. Doe worked more than 80 hours a week for the Defendants, for approximately three months, between December 2008 and March 2009. The minimum hourly wage at the time of Plaintiff's employment was $6.55 an hour. 29 USCA § 206(a)(1)(B). At this rate, Mrs. Doe is owed $8,384. Mrs. Doe was paid a total of $900 for her services, plus $1,500 in severance. These amounts should be subtracted from the amount owed Mrs. Doe, meaning that she is owed a net value of $5,984 in minimum wage restitution.

The FLSA also entitles the victim to recover a mandatory liquidated damages award in an equal amount. 29 U.S.C. § 216(b); *see also United States v. Sabhnani*, 599 F.3d 215, 259 (2d Cir. 2010) (applying the FLSA's additional liquidated damages award as part of the TVPA damages calculation). Thus, Mrs. Doe's total back wages and liquidated damages under the FLSA, as part of her award as a trafficking victim, amounts to $11,968.[6]

---

[6] Mrs. Doe acknowledges that a wage restitution award under § 1593 and an award on the basis of unjust enrichment would allow Mrs. Doe to recover twice for the same alleged harm. Because the Court awarded damages under § 1593, the Court declines to award additional damages on the basis of unjust enrichment.

III. **Conclusion**

Based on the reasoning provided herein, the Court awards judgment in Plaintiff's favor in the amount of $3,306,468 against Defendants Linda and Russell Howard.

At the damages trial, Plaintiff's counsel indicated that a post-trial memorandum on attorneys' fees would be submitted to the Court. Accordingly, the Court reserves judgment on attorneys' fees until the Court has had an opportunity to review Plaintiff's submission.

September 4, 2012
Alexandria, Virginia

/s/
Liam O'Grady
United States District Judge

12